**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF ROCHESTER,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 95-517** **(Judge George Miller)** |
| **UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S RESPONSE**
**TO THE MAY 15, 2007 SUBMISSION OF PLAINTIFF**
**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF ROCHESTER**

Pursuant to the Court's Opinion and Order dated April 13, 2007 ("Order"), defendant, the United States, respectfully submits its response to the May 15, 2007 Submission Of Plaintiff First Federal Savings And Loan Association Of Rochester Pursuant To The Court's Opinion And Order Of April 13, 2007.

Defendant submits the attached Report Of Dr. David P. Rochester In Response To The Revised Damage Calculation By Dr. Donald M. Kaplan. As explained in Dr. Rochester's Report, in his revised damage calculation, Dr. Kaplan went beyond the request of the Court in its Order by offering a set of calculations that reflects the impact of including net operating loss ("NOL") tax savings in his calculation of conversion proceeds. Dr. Kaplan stated that "[s]ince the loss of those tax savings caused First Federal's pre-conversion capital to be lower (like the lost revenue from the restructuring transactions), it seems reasonable to account for them in any new calculation of conversion proceeds." Kaplan Revised Report at 2. Dr. Kaplan further explained "… that tax benefit would have increased First Federal's pre-conversion capital by $7.4 million, and, therefore, would have enhanced the Bank's value correspondingly. Kaplan

Revised Report at 3. He concluded that "…it seems appropriate to account for that additional capital in reevaluating First Federal's conversion proceeds." Kaplan Revised Report at 5.

Dr. Kaplan's new damage calculation is inappropriate for at least two reasons. First, his new damage calculation went beyond the Court's directive to the parties in its Order. The Court requested only that the offset calculation be redone to reflect the Court's findings with regard to First Federal's restructuring damage claim. Second, Dr. Kaplan's conclusions are based upon the unsupported assumption that the realization of the tax benefits would have increased First Federal's pre-conversion capital. The impact that the utilization of NOL carryforwards has on a thrift's capital depends on the source from which those NOLs originated. Pursuant to Financial Accounting Standard 96, ¶ 23, the relevant accounting literature applicable during the period in question states:

> If not recognized at the acquisition date, the tax benefits of an acquired operating loss or tax credit carryforward for financial reporting that are recognized in financial statements after the acquisition date shall a) **first be applied to reduce to zero any goodwill and other noncurrent intangible assets** related to the acquisition and b) next to be recognized as a reduction of income tax expense.

(Emphasis added). If the NOLs in question did, in fact, arise from a business combination, their utilization would have resulted in a reduction of goodwill, and therefore, the thrift's capital. Dr. Kaplan's calculation of the standard conversion proceeds is based upon an assumed price-to-book ratio applied to the thrift's pro-forma net worth. Thus, a decrease in net worth, caused by a reduction of its goodwill balance, would reduce his valuation.

At trial Dr. Kaplan did not testify concerning the proper financial statement treatment of the NOLs which the Court has found the thrift would have utilized. In fact, Dr. Kaplan

specifically testified that he is not a tax expert. Tr. 2822-23. Plaintiff did not introduce any evidence or testimony through any witness addressing the nature of the NOLs or the appropriate treatment applicable to the NOLs. Therefore, Dr. Kaplan cannot offer any opinion addressing how the utilization of the NOLs would have affected the thrift's pre-conversion capital or its value.

Dr. Kaplan's revised calculations suffer from the same methodological flaws that we brought to the Court's attention during trial. For the purpose fo complying with the Court's April 13, 2007 Order, and without waiving our right to appeal the Court's opinion of April 13, 2007, we have prepared the following chart to compare Dr. Rochester's results, in the attached responsive report, to those reached by Dr. Kaplan in plaintiff's May 15, 2007 filing:

| | **Comparison of 2007 Recalculations ($000s)** | | | |
|---|---|---|---|---|
| | Without $7.4 Million Tax Benefit | | With $7.4 Million Tax Benefit | |
| | Dr. Kaplan | Dr. Rochester | Dr. Kaplan | Dr. Rochester |
| Calculated Proceeds from Standard Conversion | $211,750 | $190,000 | $220,000 | $195,000 |
| Calculated Offset (Reduction to Damages) | ($11,122) | ($14,381) | ($8,061) | ($11,830) |

As this chart makes clear, Dr. Kaplan's overestimates the valuations under both scenarios. The recalculated offset, pursuant to the Court's Order, should be $14.381 Million.

Respectfully submitted,

MICHAEL HERTZ
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Kenneth M. Dintzer
KENNETH M. DINTZER
Assistant Director

Of Counsel:

WILLIAM G. KANELLIS
DELISA M. SANCHEZ

s/ Arlene Pianko Groner
ARLENE PIANKO GRONER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Room 11026
Washington, D.C. 2000
Tel: (202) 307-0162
Fax: (202) 305-7643
Attorneys for Defendant

June 12, 2007

CERTIFICATE OF FILING

I hereby certify that on June 12, 2007, a copy of foregoing “DEFENDANT’S RESPONSE TO THE MAY 15, 2007 SUBMISSION OF PLAINTIFF FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF ROCHESTER,” was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court’s electronic filing system. Parties may access this filing through the Court’s system.

/s/ Arlene Pianko Groner
ARLENE PIANKO GRONER

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF ROCHESTER, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 95-517 (Judge George Miller) |
| UNITED STATES, | ) | |
| Defendant. | ) | |

**REPORT OF DR. DAVID P. ROCHESTER IN RESPONSE TO THE REVISED DAMAGE CALCULATION BY DR. DONALD M. KAPLAN**

1. At the request of counsel for the Government, I have prepared this report to respond to the "Revised Damage Calculation by Dr. Donald M. Kaplan" dated May 14, 2007 ("Revised Damage Calculation"). This report reviews and addresses the appropriateness of the assumptions and calculations in Dr. Kaplan's Revised Damage Calculation. In preparing this report I do not retract my previous testimony which asserted that, because of several key flaws in his pricing methodology, Dr. Kaplan's valuation related to the hypothetical 1993 standard conversion of First Federal is speculative, unreliable and overstated.

2. I believe that Dr. Kaplan's recalculations of First Federal's standard conversion proceeds reflect critical flaws in his valuation methodology that warrants the filing of responsive calculations, as provided for by the Court's Opinion and Order. Dr. Kaplan's Revised Damage Calculation includes the faulty assertions that the pro forma price/book ratio is the exclusive ratio to focus on and that First Federal's price/book ratio must be held constant at 59.0 percent in the recalculations.

3. Dr. Kaplan's two recalculated conversion valuation figures for First Federal, $211.750 million under his "No Tax Benefit" scenario and $220 million under his "$7.4 million Tax Benefit" scenario, also reflect a critical flaw because the valuations ignore another important pricing ratio, the pro forma price/earnings ratio. Largely as a result, Dr. Kaplan's two conversion valuation figures are overstated because they don't properly

reflect the impact of the 17 percent decline in pro forma pre-conversion earnings that are provided in Dr. Kaplan's recalculations. The overstatement of Dr. Kaplan's conversion values are reflected in his high pro forma price/earnings ratios (10.7x and 10.9x, respectively), which ratios reflect a notable and inappropriate increase from his price/earnings ratio presented at trial (9.4x).

4. While my testimony at trial also acknowledged the importance of the price/book ratio in the valuation process (see Rochester Tr.4786-4787), my testimony also asserted that appraisers focus on several ratios, including price/earnings ("P/E"), price/book ("P/B") (and price/tangible book value) and price/assets ("P/A"). I further stated that normally, the greatest weight in the valuation process is given to the price/earnings ratio (see Rochester Tr.4416-17). Also, in my Expert Report, I cited the OTS' Guidelines for (Conversion) Appraisal Reports. These guidelines set the valuation methodology standards for all conversion appraisers. The guidelines state that conversion appraisers generally should employ the three fundamental pricing ratios (i.e., P/E, P/B and P/A) mentioned above. The guidelines go on to state: "when both the converting institution and the comparable companies are recording "normal" earnings, a P/E approach may be the simplest and most direct method of valuation."

5. I cite my above-mentioned testimony and the conversion guidelines to emphasize that Dr. Kaplan's valuation methodology of focusing exclusively on the price/book ratio is not appropriate when, as in this case, First Federal and the comparative group are reporting positive earnings. Therefore, I have ample justification to challenge Dr. Kaplan's recalculated valuations by providing the Court with alternative values that are lower than Dr. Kaplan's. My alternative valuations place appropriate weight on both the price/earnings ratio and price/book ratio, as well as appropriately reflect the impact of a 17 percent decline in First Federal's pro forma earnings stream.

6. In this report, I have attached my recalculation of First Federal's standard conversion valuations based on the two revised scenarios presented in Dr. Kaplan's Revised Damage Calculation. Dr. Kaplan's first revised scenario does not reflect the $7.4 million tax benefit and his second revised scenario reflects this tax benefit. My valuation

recalculations utilize the same input assumptions and dollar figures that have been utilized by Dr. Kaplan in his recalculations, including the same dollar figures for pro forma pre-conversion net worth, pre-conversion trailing twelve month earnings and pre-conversion assets. My two valuations, however, also reflect corrections to the critical flaws in Dr. Kaplan's valuation methodology. My two recalculated conversion values for First Federal are presented in the attached Exhibit 1.

7. As presented in Exhibit 1, my recalculated conversion value for First Federal is $190 million under the "No Tax Benefit" scenario and $195 million under the "$7.4 Million Tax Benefit" scenario, versus Dr. Kaplan's recalculated values of $211.750 million and $220 million, respectively. Contrary to Dr. Kaplan's assertions, my lower valuations for First Federal reflect the argument that:

   - The valuation process should not place exclusive weight on the price/book ratio, to the exclusion of the price/earnings ratio; and
   - It is not valid to maintain a constant price/book ratio (Dr. Kaplan maintains his ratio constant at 59%) if the institution being valued shows a substantial decline in earnings. Dr. Kaplan's recalculations for First Federal reflect a sharp 17% decline in pre-conversion earnings, which he ignores by holding constant the price/book ratio in his valuation model.

8. As a result of Dr. Kaplan's flawed pricing methodology, his valuations under his two scenarios are overstated, as they reflect price/book and price/earnings ratios which are too high. My valuations for First Federal correct the flaws in Dr. Kaplan's methodology and, as a result, reflect more appropriate price/book and price/earnings ratios. The attached Exhibits 2-A and 2-B compare my recalculated valuations to those of Dr. Kaplan under the two scenarios.

* * * * *

9. My work is ongoing and any opinions are subject to revision based on new information (including new reports or testimony by Plaintiff's experts), which subsequently may be provided to, or obtained by me.

Respectfully submitted,

David P. Rochester

Date: __June 12, 2007__

K:\260\2007\Dr_Rochester_Response_2007-06-12.DOC

# EXHIBIT 1
# First Federal of Rochester
# Conversion Proceeds, Earnings and Market Pricing Ratios
## (AS RECALCULATED)

Financial Data as of or for the year ended 12/31/1992

| | Recalculted - No Tax Benefit | Recalculted - $7.4 Million Tax Benefit |
|---|---|---|
| **Pro Forma Stockholders' Equity** | ($000) | ($000) |
| **Gross Proceeds -** | **190,000** | **195,000** |
| Offering Expenses: | | |
| Fixed Expenses | 2,500 | 2,500 |
| Commissions (2.75% on 80% of stock sold) | 4,180 | 4,290 |
| Reverse Professional Fees for CT Acquisition | (880) | (880) |
| | 5,800 | 5,910 |
| Management Recognition Program (MRP) (4% of total) | 7,600 | 7,800 |
| Employee Stock Ownership Program (ESOP) (7% of total) | 13,300 | 13,650 |
| | 20,900 | 21,450 |
| Net Proceeds | 163,300 | 167,640 |
| Plus: Warrant Payment to FDIC in 1991 | 3,000 | 3,000 |
| Less: Value of Warrants for IPO | (12,800) | (13,150) |
| Net Increase in Capital | 153,500 | 157,490 |
| Plus: Pre-Conversion Net Worth (GAAP) | **188,186** | **195,793** |
| Total Pro Forma Net Worth | 341,686 | 353,283 |
| Less: Goodwill | (96,536) | (96,536) |
| Pro Forma Tangible Net Worth | 245,150 | 256,747 |
| **Pro Forma Earnings** | | |
| Gross Return **(6%)** | | |
| After Taxes of **41%** **(3.5%)** | 5,434 | 5,575 |
| MRP Amortization over 5 years (after taxes) | (897) | (920) |
| ESOP Amortization over 10 years (after taxes) | (785) | (805) |
| | 3,752 | 3,850 |
| Trailing Twelve Months Earnings at Pro Forma **41%** Tax Rate | **15,655** | **15,772** |
| Total Pro Forma Earnings | 19,407 | 19,622 |
| **Pro Forma Assets:** | | |
| Pre-Conversion Assets | **6,522,629** | **6,530,236** |
| Plus: Net Increase in Capital | 153,500 | 157,490 |
| Total Pro Forma Assets | 6,676,129 | 6,687,726 |

| **Pro Forma Ratios** | **Recalculted - No Tax Benefit** | **Recalculted - $7.4 Million Tax Benefit** |
|---|---|---|
| Price/Earnings | **9.8x** | **9.9x** |
| Price/Book | **55.6%** | **55.2%** |
| Price/Tangible Book | **77.5%** | **76.0%** |
| Price/Assets | **2.8%** | **2.9%** |

# EXHIBIT 2-A

**First Federal of Rochester**

**Dr. Kaplan's Recalculated 1993 Valuation vs. Dr. Rochester's Recalculated 1993 Valuation**

**- NO TAX BENEFIT SCENARIO -**

Dr. Kaplan's 1993 Valuation

**Value of $211.75 Million**

($170.9 Million Net Increase in Capital)

| | Recalculated First Federal Pricing Ratios | Discount (Premium) to All Publicly Traded Thrifts at 7/28/1993 | Discount (Premium) to 1993 IPOs |
|---|---|---|---|
| Price/Earnings | 10.7x | -6% | 11% |
| Price/Book Value | 59.0% | 40% | 1% |
| Price/Tangible Book Value | 80.7% | 21% | -27% |
| Price/Assets | 3.2% | 61% | 61% |

Dr. Rochester's 1993 Valuation

**Value of $190 Million**

($153.5 Million Net Increase in Capital)

| | Recalculated First Federal Pricing Ratios | Discount (Premium) to All Publicly Traded Thrifts at 7/28/1993 | Discount (Premium) to 1993 IPOs |
|---|---|---|---|
| Price/Earnings | 9.8x | 3% | 18% |
| Price/Book Value | 55.6% | 43% | 7% |
| Price/Tangible Book Value | 77.5% | 24% | -22% |
| Price/Assets | 2.8% | 65% | 66% |

# EXHIBIT 2-B

**First Federal of Rochester**

**Dr. Kaplan's Recalculated 1993 Valuation vs. Dr. Rochester's Recalculated 1993 Valuation**

**- $7.4 MILLION TAX BENEFIT SCENARIO -**

Dr. Kaplan's 1993 Valuation

**Value of $220 Million**

($177.5 Million Net Increase in Capital)

| | Recalculated First Federal Pricing Ratios | Discount (Premium) to All Publicly Traded Thrifts at 7/28/1993 | Discount (Premium) to 1993 IPOs |
|---|---|---|---|
| Price/Earnings | 10.9x | -8% | 9% |
| Price/Book Value | 58.9% | 40% | 1% |
| Price/Tangible Book Value | 79.5% | 22% | -25% |
| Price/Assets | 3.3% | 59% | 60% |

Dr. Rochester's 1993 Valuation

**Value of $195 Million**

($157.5 Million Net Increase in Capital)

| | Recalculated First Federal Pricing Ratios | Discount (Premium) to All Publicly Traded Thrifts at 7/28/1993 | Discount (Premium) to 1993 IPOs |
|---|---|---|---|
| Price/Earnings | 9.9x | 2% | 18% |
| Price/Book Value | 55.2% | 44% | 7% |
| Price/Tangible Book Value | 76.0% | 26% | -20% |
| Price/Assets | 2.9% | 64% | 65% |