# In the United States Court of Federal Claims

No. 95-517 C
Filed June 19, 2007
TO BE PUBLISHED

FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF ROCHESTER,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

*Winstar*, damages, FIRREA, contract breach as cause of curtailed asset growth, lost profits derived from thrift's actual historic yields and costs of funds, failure to approve merger application as breach, prior material breach, damages due to compelled modified conversion, offset of benefits from conversion, award of damages where Government was large economic stakeholder of mutual thrift, contractual provision for recovery by prevailing party of "attorneys' fees and other costs," motion under RCFC 59(a)(1) for reconsideration of non-final order, RCFC 54(d)(2)(A) and (B), entry of final judgment pursuant to RCFC 54(b) as to all claims except claim for attorneys' fees and related nontaxable expenses, deferral of consideration of latter claim, RCFC 58(c)(1)

David T. Case, Kirkpatrick & Lockhart Preston Gates Ellis LLP, Washington, D.C., for plaintiff. Joseph J. Brigati, Kirkpatrick & Lockhart Preston Gates Ellis LLP, and Joseph P. Vitale, Kirkpatrick & Lockhart, LLP, Washington, D.C., of counsel.

Jerome A. Madden, Trial Attorney, William F. Ryan, Assistant Director, Jeanne E. Davidson, Deputy Director, David M. Cohen, Director, Stuart E. Schiffer, Deputy Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant. Gregory R. Firehock, Arlene Pianko Groner, William G. Kanellis, Delisa M. Sanchez, Trial Attorneys, United States Department of Justice, Washington, D.C., of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge.

In its Opinion and Order dated April 13, 2007 (docket entry 181), *First Fed. Sav. & Loan Ass'n of Rochester v. United States*, 76 Fed. Cl. 106 (2007),[1] the Court found that plaintiff proved its entitlement to damages at trial in the amount of $96.581 million as a result of defendant's breach of contract. The Court also found that First Federal suffered damages of $2 million—rather than the $11.5 million plaintiff asserted—as a result of restructuring its asset portfolio in advance of the Canada Trust transaction. *Id.* at 147. In light of that finding the Court concluded that plaintiff had understated the amount to be offset against the damages to which the Court held that First Federal was otherwise entitled, *i.e.*, $96.581 million. *Id.* at 156–57. Pursuant to the Court's direction in its Opinion and Order, plaintiff filed on May 15, 2007, a revised calculation of the amount to be offset against the damages established at trial ("Pl.'s Revised Calculation," docket entry 182). The Government filed a response ("Def.'s Resp.," docket entry 183) on June 12, 2007.

Plaintiff's filing attached a report by Dr. Donald M. Kaplan, who testified for plaintiff at trial as an expert witness, in which Dr. Kaplan "follow[ed] the identical process described in his trial testimony" in calculating plaintiff's damages and the appropriate offset. Pl.'s Revised Calculation 1. Dr. Kaplan presented the Court with two alternative calculations of the amount to be offset. In the first, he assumed no change to the quantum of damages to which he testified at trial other than the reduction, described above, of lost profit damages by $9.5 million. In light of that reduction, he calculated the offset to be $11.122 million. *Id.* at 2. However, Dr. Kaplan explained, his original calculations had been performed "before the loss of [net operating losses ("NOLs")] had been focused upon as an element of First Federal's damages." *Id.*, Attach. 1, at 5. If one were to take into account the $7.4 million benefit of the NOLs, Dr. Kaplan calculated that the offset would decline to $8.061 million. *Id.* at 2.

Defendant objected to Dr. Kaplan's consideration of the benefit of the NOLs on the grounds that it (1) went "beyond the Court's directive to the party in its Order," and (2) was "based upon the unsupported assumption that the realization of the tax benefits would have increased First Federal's pre-conversion capital." Def.'s Resp. 2. Defendant also argued that "Dr. Kaplan's revised calculations suffer from the same methodological flaws that [the Government] brought to the Court's attention during trial." *Id.* at 3. Defendant presented a report by Dr. David P. Rochester, who testified at trial as an expert witness on behalf of the Government, employing the same methodology he used at trial to calculate the offset the Government contended was appropriate. Using his methodology, Dr. Rochester calculated that the offset should be $14.381 million without taking into account the NOLs or, if the Court were to take into account the NOLs, $11.830 million. *Id.*

Plaintiff could have introduced evidence regarding the effect of the $7.4 million in tax benefits on plaintiff's pre-conversion capital at trial, but did not. Defendant did not have a chance therefore to cross-examine Dr. Kaplan on this point at trial or to offer evidence in support

[1] This Opinion and Order assumes familiarity with the Court's prior Opinion and Order in this matter.

of its contention that the realization of tax benefits would *not* have increased First Federal's pre-conversion capital. The Court is not inclined to re-open the record of this 27-day trial at this late stage in order to permit the parties to fully litigate their opposing contentions on this issue (nor has either party requested that the Court do so). Therefore, the Court concludes that the proper calculation of the offset, consistent with Dr. Kaplan's testimony and related exhibits proffered by plaintiff at trial, should not take into account the effect of the premature lapse of plaintiff's NOLs resulting from the Canada Trust acquisition. In that regard, the Government appears not to quarrel with Dr. Kaplan's calculation that, disregarding the NOLs, the offset should be $11.122 million, assuming *arguendo* that Dr. Kaplan's methodology and damage estimates, as modified by the Court, are sound and reliable.

In its submission, the Government argued, as it had at trial, that Dr. Kaplan's methodology was flawed. In support of that contention the Government submitted a report by Dr. Rochester. The Court did not contemplate in its April 13, 2007, Order that the parties would reargue in their submissions the merits of the competing methodologies of their expert witnesses. Nevertheless, the Court has treated defendant's submission as, in effect, a motion for reconsideration of a non-final order under Rule 59(a)(1) of the Rules of the United States Court of Federal Claims ("RCFC").[2] Accordingly, the Court has again reviewed the trial testimony of Dr. Kaplan and of Dr. Rochester,[3] as well as the relevant, related trial exhibits. The Court has also considered Dr. Rochester's new report, dated June 12, 2007, which was attached to defendant's response to plaintiff's May 15, 2007, filing. Having done so, the Court remains of the view that the evidentiary record, together with the Court's understanding of the expert witnesses' competing methodologies and the Court's observation of those witnesses' demeanor, fully supports the Court's findings as to the appropriate methodology for determining plaintiff's damages and the amount of those damages. *See, e.g., Citizens Fed. Bank v. United States*, 474 F.3d 1314, 1318 (Fed. Cir. 2007) ("The standard . . . governing selection of an appropriate methodology for determining damages . . . lies within the trial court's discretion."). The Court, in its Opinion and Order, found Dr. Kaplan to be "a knowledgeable, thorough, and credible witness." *First Federal*, 76 Fed. Cl. at 121. The Court "also found Dr. Kaplan's testimony regarding the other elements of plaintiff's claimed damages . . . to be sound and reliable." *Id.* Nothing in the Government's submission warrants reconsideration of the Court's earlier findings on damages, and the Court therefore adheres to those findings as set forth in the Court's Opinion and Order of April 13, 2007.

---

[2] Because the Court's April 13, 2007, Order was an interlocutory order, "the Court, applying the law of the case doctrine, has the power to reconsider and modify its order at any time before the entry of a final judgment, subject to the principle that questions once decided ought not to be subject to continued re-argument." *Holland v. United States*, 75 Fed. Cl. 492, 494 n.2 (2007) (citing *Fla. Power & Light Co. v. United States*, 66 Fed. Cl. 93, 95–96 (2005)); *see also Wolfchild v. United States*, 38 Fed. Cl. 779, 784–85 (2000) (citing *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 698 (Fed. Cir. 1999)).

[3] Dr. Kaplan testified for five and a half days. Dr. Rochester testified for a day and a half.

In light of the foregoing, the Court finds that the amount to be offset against plaintiff's gross damages of $96.581 million is $11.122 million, the amount calculated by Dr. Kaplan without taking into account the $7.4 million benefit of plaintiff's NOLs. Thus, plaintiff is entitled to net damages in the amount of $85.459 million.[4]

The Court will not delay the entry of judgment in order to determine the amount, if any, of "attorneys' fees and related nontaxable expenses," RCFC 54(d)(2)(A), to which plaintiff may be entitled pursuant to Section 8.10 of the Financing Agreement ("Section 8.10") or otherwise. *See* RCFC 58(c)(1). Section 8.10, said by Judge Merow to be a provision "perhaps unique to this *Winstar* case," *First Fed. Sav. & Loan Ass'n of Rochester v. United States*, 58 Fed. Cl. 139, 150 (2003), states:

> If any legal action or any arbitration or other proceeding of any kind is brought for the enforcement of this Agreement, the Warrant Agreement, or any FSLIC Warrant, or because of an alleged breach, default, or misrepresentation or any other dispute in connection with any provision or provisions of this Agreement, the Warrant Agreement, or any FSLIC Warrant, the successful or prevailing party or parties shall be entitled to recover all reasonable attorneys' fees and other costs incurred in such action or proceeding, in addition to any other relief to which it or they may be entitled.

Plaintiff's Exhibit 17 at 61.

First Federal is required by RCFC 54(d)(2)(A) to make any claim for attorneys' fees and related nontaxable expenses by motion. That is, this is not a case in which the "substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial." RCFC 54(d)(2)(A); *see Budnich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988); *Carolina Power & Light Co. v. Dynergy Mktg. & Trade*, 415 F.3d 354 (4th Cir. 2005) (collecting cases). Any such motion by First Federal must be filed within the time limit specified in RCFC 54(d)(2)(B).

The Court believes that it would best serve the interests of the parties and the Court to defer consideration of any claim by First Federal for attorneys' fees and related nontaxable expenses until after the resolution of any appellate proceedings (or expiration of the time for taking an appeal) related to the final judgment to be entered pursuant to this Opinion and Order.

---

[4] First Federal established at trial damages in the total amount of $96.581 million, consisting of lost profits of $26.061 million resulting from curtailed asset growth caused by the breach of the Financing Agreement; damages of $56.137 million as a result of its inability to consummate a merger with Monroe Savings Bank; and $14.383 million in damages attributable to the Canada Trust transaction. *First Fed.*, 76 Fed. Cl. at 152. Subtracting the offset of $11.122 million to take account of the benefits that flowed to First Federal as a result of the Canada Trust transaction yields net damages in the amount of $85.459 million.

*See* Advisory Committee Notes to Rule 58, FED. R. CIV. P., 1993 Amendment ("[T]he district court may prefer to defer consideration of the claim for fees until after the appeal is resolved."). Therefore, because plaintiff's action has been pending in this court since 1995, and perhaps out of an excess of caution,[5] the Court hereby expressly determines, pursuant to RCFC 54(b), that "there is no just reason for delay" in the entry of a final judgment. Accordingly, the Court further expressly directs the Clerk to enter a final judgment pursuant to RCFC 54(b) in the amount of $85.459 million in favor of plaintiff First Federal as to all of its claims except any claim for attorneys' fees and related nontaxable expenses pursuant to Section 8.10 (or otherwise), which the Court will address following the resolution of any appellate proceedings (or expiration of the time for taking an appeal) related to the final judgment to be entered pursuant to this Opinion and Order. *Cf. Independence Park Apartments v. United States*, 61 Fed. Cl. 692, 718 (2004) ("There is no just reason for delay in entering final judgment on the takings claims in this proceeding, especially given the circumstance that the case is over ten years old and has been the subject of extensive prior proceedings."), *rev'd on other grounds*, 449 F.3d 1235, *reh'g granted in part and denied in part*, 465 F.3d 1308 (Fed. Cir. 2006).

IT IS SO ORDERED.

s/ George W. Miller
GEORGE W. MILLER
Judge

[5] It is not altogether clear to the Court whether the existence of plaintiff's claim under Section 8.10 for recovery of "attorneys' fees and other costs" means that this action presents "more than one claim for relief" within the meaning of RCFC 54(b). *See* 10 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2657 (3d ed. 1998) ("[I]t is not always easy to tell whether a case involves multiple claims (to which Rule 54(b) is applicable) or a single claim . . . (to which Rule 54(b) is not applicable."). Whether the judgment for plaintiff in this case should be entered pursuant to RCFC 54(b) or RCFC 58 would seem, however, to be immaterial. In either event, as the Court believes it has made clear, the Court intends to deal with any claims for attorneys' fees and related nontaxable expenses following the resolution of any appellate proceedings (or expiration of the time for taking an appeal) related to the final judgment to be entered pursuant to this Opinion and Order.