# In the United States Court of Federal Claims

No. 95-517 C
Filed August 6, 2009
TO BE PUBLISHED

| | |
|---|---|
| FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF ROCHESTER, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | *Winstar*-Related Case; Attorneys' Fees and Costs; Provision in Assistance Agreement That Prevailing Party is Entitled to Reasonable Attorneys' Fees and Other Costs; Sovereign Immunity; RCFC 6(b)(2); RCFC 54(d)(1); Tucker Act, 28 U.S.C. § 1491; Equal Access to Justice Act, 28 U.S.C. § 2412; Bill of Costs; 28 U.S.C. § 1920; Time Deadlines for Briefs on Bill of Costs; Contractual Fee-Shifting Provision as Alternative Basis for Recovery of Costs |

David T. Case, K&L Gates LLP, Washington, D.C., for plaintiff.  Joseph J. Brigati, Joseph P. Vitale, K&L Gates LLP, Washington, D.C., of counsel.

Elizabeth M. Hosford, Senior Trial Attorney, Kenneth M. Dintzer, Assistant Director, Jeanne E. Davidson, Director, Michael F. Hertz, Deputy Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant.  Delisa M. Sanchez, Jacob A. Schunk, Amanda L. Tantum, Trial Attorneys, United States Department of Justice, Washington, D.C., of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge

On June 19, 2007, judgment was entered for plaintiff in this *Winstar*-related case in the amount of $85,459,000 as a result of defendant's breach of a Financing Agreement ("Financing Agreement") executed by the Federal Savings and Loan Insurance Corporation ("FSLIC") and First Federal Savings and Loan Association of Rochester ("First Federal" or "plaintiff").  *First Federal Savs. and Loan Ass'n of Rochester v. United States*, 76 Fed. Cl. 765 (2007) ("*First Federal II*").  In its opinion, the Court expressly delayed the determination of "the amount, if any, of attorneys' fees and related non-taxable expenses to which plaintiff may be entitled

pursuant to Section 8.10 of the Financing Agreement or otherwise." *First Federal II*, 76 Fed. Cl. at 767 (internal quotations omitted).  The Federal Circuit affirmed this Court's judgment in an opinion filed on August 13, 2008, *First Federal Savs. and Loan Ass'n of Rochester v. United States*, 290 Fed. App'x 349 (Fed. Cir. 2008) ("*First Federal III*"), and the Court of Appeals issued its mandate November 14, 2009 (docket entry 188).

Promptly after receipt of the mandate of the Court of Appeals, this Court held a scheduling conference with the parties on November 21, 2008.  Pursuant to an order (docket entry 191, Nov. 21, 2008) incorporating a briefing schedule agreed to at the conference, plaintiff filed its motion for attorneys' fees and other costs on December 12, 2008 (docket entry 193) ("Pl.'s Mot.").  On the same day, plaintiff separately filed its bill of costs (docket entry 192) ("Pl.'s BOC").  On January 9, 2009 the Government filed an opposition to plaintiff's motion along with a cross motion to dismiss plaintiff's claims for attorneys' fees and other costs (docket entry 194) ("Def.'s Cross Mot").  On the same day, defendant also filed objections to plaintiff's bill of costs (docket entry 195) ("Def.'s Resp. to BOC").

In its cross motion to dismiss plaintiff's motion for attorneys' fees and other costs, defendant asserts that the Government is not liable for fees and costs because Congress has not waived sovereign immunity from such a claim.  Def.'s Cross Mot. at 3-8.  As discussed below, the Court is not persuaded by defendant's argument.  The contract at issue in this case contains a specific fee-shifting provision granting attorneys' fees and other costs to the prevailing party in litigation regarding the contract.  The Court concludes that FSLIC possessed statutory authority to enter into such a contract.  Defendant, in the alternative, disputes individual categories of fees and costs.  The Court's resolution of these is also set forth below.

The following motions relating to defendant's objections to plaintiff's bill of costs are also pending: (1) defendant's motion for reconsideration (docket entry 198, Jan. 29, 2009) ("Def.'s Mot. for Reconsid.") of the Court's order (docket entry 197, Jan. 26, 2009) ("Order Granting Pl.'s MET") extending by four days the time for plaintiff to file a reply in support of its bill of costs; (2) defendant's motion for leave to file a sur-reply to plaintiff's reply in support of its bill of costs (docket entry 204, Feb. 24, 2009) ("Def.'s Mot. for Sur-Reply"); and (3) plaintiff's request for leave to file an opposition to defendant's sur-reply (docket entry 205, Mar. 10, 2009) ("Pl.'s Mot. for Resp. to Sur-Reply").  The Court deals with these motions in Part III of the Discussion section of this Memorandum Opinion and Order.

Plaintiff requests $5,075,965.22[1] in attorneys' fees, paralegal fees, and other non-taxable

---

[1]  Plaintiff initially requested a total of $5,107,472.43 of which $3,418,712.72 was for attorneys' and paralegals' fees and $1,688,759.71 was for non-taxable costs.  In subsequent briefing, however, plaintiff reduced its claim for attorneys' fees by $31,507.11 to $3,387,205.51.  Plaintiff First Federal's Opposition to Defendant's Cross Motion to Dismiss Plaintiff's Claims for Attorneys' Fees and Other Costs and Reply to Defendant's Response to Plaintiff First Federal's Motion for Attorneys' Fees and Other Costs at 14 (docket entry 200, Jan. 30, 2009)

costs and $118,643.20[2] in taxable costs.  Thus, the total recovery sought by plaintiff is $5,194,608.42.

## DISCUSSION

First Federal seeks attorneys' fees and non-taxable costs pursuant to Section 8.10 of the Financing Agreement.  Pl.'s Mot. at 1.  Defendant objects to the award of any attorneys' fees and non-taxable costs, alleging that the Government has not consented to suit for such monetary claims.  Def.'s Cross Mot. at 3-8.  Defendant concedes that Section 8.10 does by its terms purport to provide for the recovery of reasonable attorneys' fees and other costs by the prevailing party.  *Id.* at 4.  However, defendant argues that this provision is ineffective because the FSLIC was not authorized to agree to such a provision, which could result in an award against the Government.  *Id.* at 4-5.  In the alternative, defendant also objects to specific aspects of plaintiff's claims for fees and costs.  *Id.* at 8-13.

I.   **Section 8.10 of the Financing Agreement Is Effective and Permits Plaintiff to Recover From the Government Reasonable Attorneys' Fees and Other Costs Incurred in This Action**

Section 8.10 of the Financing Agreement ("Section 8.10") states:

> If any legal action or any arbitration or other proceeding of any kind is brought for the enforcement of this Agreement, the Warrant Agreement, or any FSLIC Warrant, or because of an alleged breach, default, or misrepresentation or any other dispute in connection with any provision or provisions of this Agreement, the Warrant Agreement, or any FSLIC Warrant, *the successful or prevailing party or parties shall be entitled to recover all reasonable attorneys' fees and other costs incurred in such action or proceeding*, in addition to any other relief to which it or they may be entitled.

*Id.* (emphasis added).

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  The "terms of [the United States']

---

("Pl.'s Resp. to Cross Mot.") (withdrawing $14,213.52 in attorneys' fees); Unopposed Addendum to Plaintiff First Federal's Motion for Attorneys' Fees and Other Costs (docket entry 209, June 12, 2009) ("Pl.'s Addendum") (withdrawing an additional $17,293.69 in attorneys' fees).

[2]  Plaintiff's bill of costs initially claimed $120,661.10 in taxable costs, but plaintiff subsequently reduced its claim for taxable costs by $2,017.90 to $118,643.20.  Pl.'s BOC; Plaintiff's Reply to Defendant's Objections to Plaintiff's Bill of Costs at 10 (docket entry 201, Jan. 30, 2009) ("Pl.'s Reply for BOC").

consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  Waiver of sovereign immunity, and hence consent to be sued, must be expressed unequivocally—it cannot be implied.  *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992); *Ledford v. United States*, 297 F.3d 1378, 1381 (Fed. Cir. 2002).  Moreover, a waiver of the Government's sovereign immunity must be strictly construed in favor of the Government. *United States Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992); *Cosmic Constr. Co. v. United States*, 697 F.2d 1389, 1390 (Fed. Cir. 1982).

When Congress created FSLIC in 1934, it empowered the agency to "make contracts, sue and be sued, hire and compensate officers and agents, and perform various financial operations." 12 U.S.C. § 1725(c) (repealed 1989) ("FSLIC's Enabling Statute").[3]  The Government argues that the language in FSLIC's Enabling Statute does not authorize it to agree to be liable for legal expenses.

> A.     *FSLIC's Power to "Make Contracts" Provides the Basis for the Government's Waiver of Sovereign Immunity With Respect to Plaintiff's Claim for Litigation Fees and Costs Based on the Contractual Fee-Shifting Provision*

The Government argues that FSLIC's power to "make contracts" is not a waiver of sovereign immunity for plaintiff's contractual claim for attorneys' fees and other costs.  Def.'s Cross Mot. at 3-8.  The Government posits that the FSLIC did not have authority to agree to Section 8.10 because Congress did not specifically authorize FSLIC to waive sovereign immunity to claims for litigation costs.  *Id.* at 4-5.  The Government argues that since the FSLIC's Enabling Statute did not explicitly list compensating an opposing party for fees and non-taxable costs as one of its authorized powers, the FSLIC was powerless to agree to a contract provision that provided for payment of attorneys' fees and other costs.  *Id.* at 6.

> 1.     Plaintiff Is Not Required to Show That a Statute Specifically Authorizes an Award of Attorneys' Fees and Other Costs

The Government does not cite any authority explicitly supporting its premise that an agency must be specifically authorized by Congress to agree to be liable for legal expenses in a contract it is otherwise authorized to make.  Instead, the Government argues that this proposition must be true because (1) allowing agencies to agree to provisions awarding legal fees upon breach without an explicit Congressional waiver would "eviscerate the exclusive power of

---

[3]  The statute currently governing the Federal Deposit Insurance Corporation ("FDIC"), which succeeded FSLIC in 1989, contains a nearly identical provision setting out its corporate powers.  *See* 12 U.S.C. § 1819(a) (FDIC "shall have power . . . [t]o make contracts . . . [t]o sue and be sued, and complain and defend, by and through its own attorneys, in any court of law or equity, State or Federal").

Congress to waive sovereign immunity," and (2) fee awards are "neither understood nor contemplated as a form of damages in a breach of contract action, especially one involving the United States." Defendant's Reply in Support of its Cross Motion to Dismiss Plaintiff's Claims for Attorneys' Fees and Other Costs at 6-7 (docket entry 203, Feb. 17, 2009) ("Def.'s Reply for Cross Mot."). The Government contends that First Federal must set forth specific statutory authority in order to be eligible for the award of attorneys' fees and other costs provided for in Section 8.10. Def.'s Cross Mot. at 4-5. For the reasons elaborated below, the Court does not agree.

        a.     The American Rule Does Not Prevail Over an Enforceable Contractual Fee-Shifting Provision

It is true, as the Government points out, that in the United States, the default rule of litigation is that each party bears the costs of its own legal representation. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975); *F. D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129-30 (1974); *Chevron U.S.A., Inc. v. United States*, 71 Fed. Cl. 236, 268 (2006). And, it is "inappropriate for the Judiciary, without legislative guidance, to reallocate the burdens of litigation." *Alyeska*, 421 U.S. at 247. Therefore, courts must adhere to the "longstanding American rule" prohibiting awards of litigation fees and expenses against the Government unless there is an express waiver of sovereign immunity for such awards by Congress. *Key Tronic Corp. v. United States*, 511 U.S. 809, 815 (1994). However, the American rule is simply a default rule and does not prevail over fee-shifting provisions in which the parties to a government contract *ex ante* agree to a different allocation of the burdens of litigation. *Travelers Cas. and Sur. Co. of Am. v. Pac. Gas and Elec. Co.*, 549 U.S. 443, 448 (2007) ("[The American Rule] can also be overcome by an 'enforceable contract' allocating attorney's fees.") (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717 (1967)); *Summit Valley Indus. v. Local 112, United Bhd. of Carpenters*, 456 U.S. 717, 721 (1982) ("Under the American Rule it is well established that attorney's fees are not ordinarily recoverable in the absence of a statute or *enforceable contract* providing therefor.") (internal quotations omitted) (emphasis added); *Alyeska*, 421 U.S. at 257 ("[A]bsent statute or enforceable contract, litigants pay their own attorneys' fees."). Therefore, a broad waiver of sovereign immunity authorizing a government agency to enter into contracts carries with it the agency's authorization to enter into contracts containing fee-shifting provisions.

All of the cases that defendant relies upon in support of its contention that attorneys' fees cannot be awarded against the Government without explicit statutory authorization are simply straightforward applications of the traditional American rule in cases where the parties have no prior agreement on the subject of fees. *Key Tronic*, 511 U.S. at 809; *Alyeska*, 421 U.S. at 240; *Chevron*, 71 Fed. Cl. at 236; *Piggly Wiggly Corp. v. United States*, 81 F. Supp. 819 (Ct. Cl. 1949). None of these cases involve an enforceable contract with the Government that includes a specific fee-shifting provision. The cases relied upon by the Government are thus not applicable.

Indeed, neither party cites any cases squarely addressing the issue at hand, whether an agency must have specific statutory authority, in view of the default American rule, to agree to a fee-shifting provision when it is otherwise broadly authorized to make contracts.  The Government cites *Texas Instruments v. United States*, 991 F.2d 760 (Fed. Cir. 1993) ("TI") as allegedly supporting its position that the absence of a statute specifically allowing recovery of litigation fees and costs described in Section 8.10 requires denial of plaintiff's motion.  Def.'s Cross Mot. at 6.  However, the award of legal fees in *TI* was governed by statute, and the contract at issue did not have a fee-shifting provision.  *Id.*  The applicable statute specifically excluded TI, because of its size, from being awarded such fees under 5 U.S.C. § 504.  *TI*, 991 F.2d at 767 ("Thus it is clear that section 504 applies to fees and expenses incurred before a board of contract appeals as a result of certain actions by the Government, and that section 504 is meant to draw a line, benefitting smaller entities but not those with deeper pockets.").  Since (1) defendant has not asserted that a statute exists specifically precluding plaintiff from recovering attorneys' fees under the Financing Agreement, and (2) Section 8.10 provides for an award of attorneys' fees and costs, *TI* does not affect the outcome in this case.

> b.    The No-Interest Rule, Like the American Rule, Does Not
>        Preclude an Award of Attorneys' Fees and Costs to Plaintiff

Both parties analogize to cases dealing with the question whether and when the Government, in light of the default no-interest rule, may be liable for interest on a claim.  As further explained below, however, the no-interest rule, like the American rule, is merely a default position that applies in the absence of an agreement to the contrary.  Because the parties in this case are governed by a valid express contract, the question is whether such a default rule can override an express contractual provision, or whether a contractual override of a default rule requires explicit congressional authority.  The cases demonstrate that a contract trumps both the no-interest rule and, in these circumstances, the need for specific congressional authority.

The default rule that no interest is payable on claims against the Government reflects the historical view that interest is separate from the damages awarded on a substantive claim. *Library of Congress v. Shaw*, 478 U.S. 310, 319-22 (1986).  Like the American rule, the no-interest rule by default prohibits interest to the winning party but allows the recovery of interest on a claim where such is provided for pursuant to an explicit agreement by the parties.  *Id.*  The American and no-interest rules are both default rules relating to the allocation of litigation costs and the costs of delay.  In both cases the parties are free to contract around the default rules.

To support its position, the Government cites a case where the availability of interest was expressly governed by statute.  In *California Federal Bank v. United States*, 395 F.3d 1263 (Fed. Cir. 2005) ("*CalFed*"), the availability of prejudgment interest was directly governed by 28 U.S.C. § 2516(a), which specifically requires "[i]nterest on a claim against the United States [to] be allowed in a judgment of the United States Court of Federal Claims *only under a contract or Act of Congress expressly providing for payment thereof*."  *Id.* (emphasis added).  That is, unlike the present case, the governing statute in *CalFed required* congressional authority for any

payment of prejudgment interest, but the Federal Circuit nonetheless acknowledged that if there had been a contract providing for the payment of interest, the result could have been different. *Id*. Where, as here, we have a contract that makes clear that the parties are contracting out of the default rule, the contract governs. *See C & L Enters. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 414 (2001) (federally recognized Indian Tribe waived its tribal immunity from contractor's suit to enforce an arbitral award when the Tribe expressly agreed to arbitrate disputes arising out of an off-reservation standard form construction contract even though the tribe had immunity from suit in state court unless "Congress has authorized the suit or the tribe has waived its immunity") (quoting *Kiowa Tribe of Okla. v. Mfg. Techs.*, 523 U.S. 751, 754 (1998)).

> c.    No Statute, Including the Equal Access to Justice Act, Requires Specific Authorization by Congress for an Award of Attorneys' Fees and Costs to Plaintiff

This is a breach of contract case. The contract was made within the agency's authority. No statute purports to limit the ability of the agency to enter into a contract with a fee-shifting provision. In that regard, the only statute that could conceivably be considered pertinent to the propriety of awarding fees and other expenses against the Government in this case is the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Even the EAJA, however, does not contain language similar to that found in § 2516(a) relating to the allowability of prejudgment interest pursuant to a contractual provision or under an "Act of Congress expressly providing payment thereof." In fact, the EAJA provides that a court ordinarily is to award both fees and other expenses when an applicant otherwise qualifies, only denying them if, *inter alia*, another statute prohibits an award of the fees and expenses in question. 28 U.S.C. § 2412(b) ("Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys."). In this case, defendant has not pointed to any statute that precludes recovery of the fees and costs sought by plaintiff. Nor has defendant pointed to any authority that requires specific action by Congress to authorize plaintiff to invoke Section 8.10 against the Government.[4]

---

[4] Defendant attempts to rely upon the EAJA, asserting that it was enacted, among other reasons, to give courts the authority to award fees against the Government pursuant to the "common law exceptions" to the American rule against fee-shifting: "bad faith," "common fund," and "common benefit." Def.'s Reply for Cross Mot. at 10-11 (citing S. Rep. 96-253, at 3-4 (1979)). Defendant argues that contractual fee-shifting agreements are not exceptions to the American rule, and therefore the EAJA does not waive immunity in such cases. Def.'s Reply for Cross Mot. at 11-13. However, defendant's argument is built upon an erroneous premise—namely, that the American rule applies even where there is a fee-shifting agreement in place. As noted above, the American rule does *not* apply when the parties have an agreement to the contrary. Indeed, the EAJA, 28 U.S.C. § 2412(b), subjects the Government to the award of attorneys' fees in civil cases "to the same extent that any other party would be liable under the common law . . . for such an award." *See also* H.R. Rep. No. 96-1418 at 9 (1980) (Section 2412(b) "reflects a strong movement by Congress toward placing the federal government and

>   d.   An Express Fee-Shifting Contract Provision Overcomes the American
>        Rule Just as an Express Contract Provision Overcomes the No-Interest
>        Rule

Plaintiff points to *Shaw* and *Applegate v. United States* as demonstrating that an express contract provision overcomes the default no-interest rule and falls within the Government's Tucker Act waiver of sovereign immunity. *Shaw*, 478 U.S. at 319-22; *Applegate v. United States*, 52 Fed. Cl. 751, 759 (2002). Plaintiff asserts that, in addition to Section 8.10, since the Tucker Act gives this court jurisdiction over "any express or implied contract with the United States," the Tucker Act waives sovereign immunity for claims based on any such contract. Pl.'s Resp. to Cross Mot. at 5; *Suburban Mortgage Assocs., Inc. v. United States Dep't of Housing and Urban Dev.*, 480 F.3d 1116, 1121 (Fed. Cir. 2007) ("The Tucker Act both waives sovereign immunity for, and grants the Court of Federal Claims exclusive jurisdiction over, actions for money damages of more than $10,000.").

In *Applegate* Judge Allegra stated:

> [E]ven were some explicit waiver required to oblige the government to pay
> attorneys fees, the case law suggests that where authority to settle a claim lies, a
> contract, at least in this court, can effectuate such a "waiver." The Supreme Court
> signaled as much in *Shaw*, when it stated that immunity for interest may be
> waived by statute or *by contract*. If "immunity" for interest may be waived by
> contract, the same must hold true for attorneys fees. Such, indeed, is effectively
> the holding in several decisions concluding that the government may not invoke
> sovereign immunity in seeking to avoid the terms of a duly-authorized settlement
> agreement.

52 Fed. Cl. 751, 759 (2002) (internal citations and quotations omitted).

---

civil litigants on completely equal footing"); *Kerin v. United States Postal Serv.*, 218 F.3d 185, 190 (2d Cir. 2000). In enacting the EAJA, Congress intended that, subject to certain limitations, the Government should be liable for attorneys' fees and expenses to the same extent as a private party. Thus, the EAJA actually bolsters plaintiff's argument that the American rule does not apply in the face of Section 8.10, and the Government has waived sovereign immunity from claims under that contractual provision.

Defendant argues that the limitations set forth in the EAJA on the award of fees and expenses require more specific authorization to overcome than the general language of the FSLIC Enabling Statute. Def.'s Reply for Cross Mot. at 6-7. That argument is incorrect. None of the authorities relied upon by defendant involve express contracts with fee-shifting provisions. *See Farrar v. Hobby*, 506 U.S. 103 (1992); *Hubbard v. United States*, 480 F.3d 1327 (Fed. Cir. 2007); *NAACP v. Civiletti*, 609 F.2d 514, 520 n.12 (D.C. Cir. 1979); *Resolution Trust Corp. v. Miramon*, 935 F. Supp. 838 (E.D. La. 1996).

Defendant asserts that Judge Allegra's reasoning in *Applegate* is erroneous because he "assumed that an 'explicit waiver' of sovereign immunity from contractual attorney's fees claims could be found in the Supreme Court's *Shaw* decision." Def.'s Reply for Cross Mot. at 9-10. This Court does not agree with defendant's characterization of the *Applegate* decision, which properly analogized from the *Shaw* decision to the attorneys' fees context. Judge Allegra recognized that the no-interest rule and the American rule are logical counterparts, the former applying to recovery of interest and the latter to recovery of attorneys' fees. Thus, that the no-interest rule may be overcome by an explicit contractual agreement supports the conclusion by analogy that the American rule may also be overcome by an explicit contractual agreement.

        2.      <u>Ordinary Principles of Contract Construction Apply to the Government and it is Bound by its Agreement to Pay Attorneys' Fees and Other Costs</u>

Indeed, "[o]nce the United States waives its immunity and does business with its citizens, it does so much as a party never cloaked with immunity." *Franconia Assocs. v. United States*, 536 U.S. 129, 141 (2002); *see also Clearfield Trust Co. v. United States*, 318 U.S. 363, 369 (1943) ("The United States does business on business terms.") (internal quotation marks omitted). In deciding contract disputes in which the Government is a party, courts apply "ordinary principles of contract construction and breach that would be applicable to any contract action between private parties." *United States v. Winstar Corp.*, 518 U.S. 839, 871 (1996); *Winstar Corp. v. United States*, 64 F.3d 1531, 1551 (Fed. Cir. 1995) ("It is well established that the government may enter into contracts with private individuals as parties. Our decision is consistent with long standing precedent that when the government enters into such contracts, its rights and duties therein are governed generally by the law applicable to contracts between private individuals.") (internal citations and quotation marks omitted). Specifically, the FSLIC's authority to make contracts has been held to be a matter within its "unfettered discretion." *Diercks v. Fed. Sav. & Loan Ins. Corp.*, 528 F.2d 916, 916 (7th Cir. 1976). It is a general rule of contracts that parties are free to provide for attorneys' fees by an express contractual provision. 3 E. Allan Farnsworth, FARNSWORTH ON CONTRACTS 316 (3d ed. 2004) ("[A] provision allowing the injured party to recover attorney's fees and other legal expenses in addition to damages will be sustained, even though the injured party would not otherwise be entitled to recover them."). The FSLIC and plaintiff agreed to permit recovery of attorneys' fees and other costs by the prevailing party, and the Government is bound by that agreement.

        B.      *That Plaintiff Has Sued the United States as FSLIC's Principal Does Not Limit the Significance of FSLIC's Power to "Sue and be Sued" as Authority for the Government's Waiver of Sovereign Immunity With Respect to Plaintiff's Claim for Litigation Fees and Costs Based on the Contractual Fee-Shifting Provision*

The Government states that the power to "sue and be sued" does not permit a waiver of sovereign immunity in this case because First Federal has filed suit against the United States, and not FSLIC or FDIC "in its corporate name." Def.'s Reply for Cross Mot. at 5-6.

9

For support, defendant points to *Brazos Electric Power Cooperative v. United States*, 52 Fed. Cl. 121 (2002), in which the only source of authority plaintiff could point to for a waiver of sovereign immunity for prejudgment interest was a provision in the Federal Financing Bank's enabling statute that "[t]he Bank shall have power to sue and be sued, complain, and defend, *in its corporate name*." *Id.* at 133 (emphasis added). The plaintiff there claimed that it had sued the Federal Financing Bank in its corporate capacity, and therefore the rule precluding the award of prejudgment interest against the Government did not apply. The court disagreed, noting that the plaintiff had not, in fact, sued the Federal Financing Bank in its corporate name but had sued the United States as the only proper defendant in the Court of Federal Claims. In *Brazos Electric* the court went on to state "[w]here, however, a government corporation makes a contract as the agent of the United States, the United States may be sued in this court as principal on the contract." *Id.* (quoting *Nat'l Cored Forgings Co. v. United States*, 115 F. Supp. 469, 474 (Ct. Cl. 1953)). *Brazos Electric* stands only for the proposition that an enabling act granting an agency authority to sue or be sued in its corporate name is not itself sufficient to override the default rule precluding an award of prejudgment interest against the Government.

First Federal has properly filed suit in this court for breach of the Financing Agreement between itself and the FSLIC as the agent of the United States. Section 8.10 of that contract overrides the default rules regarding awards of attorneys' fees and expenses of litigation. Parties bringing suit in this court are required, by statute and the court's rules, to name the United States as the defendant. 28 U.S.C. § 1491(a)(1); Rule 10(a) of the Rules of the Court of Federal Claims ("RCFC") (stating that in a complaint in this court, the United States shall be "designated as the party defendant"). It is therefore wholly irrelevant for purposes of the sovereign immunity analysis that the named defendant in this action is not FSLIC or its successor, FDIC.

In any case, plaintiff does not principally rely upon the "sue and be sued" clause to demonstrate FSLIC's authority to enter into the agreement contained in Section 8.10. The Court finds that FSLIC's power to "make contracts" authorized it to agree to the entire Financing Agreement, including Section 8.10. Pl.'s Resp. to Cross Mot. at 3-4. The "sue and be sued" clause of the Enabling Statute does not limit that authority.

II.     **The Attorneys' Fees, Paralegal Fees, and Non-taxable Costs Incurred by Plaintiff Were Reasonable and Necessary to the Prosecution of Plaintiff's Claim**

Plaintiff seeks a total of $5,075,965.22 in legal fees and other non-taxable costs pursuant to Section 8.10 of the Financing Agreement. $2,853,177.61 of this amount is for attorneys' fees, $534,027.90 is for paralegals' fees, $1,368,071.51 is for the fees of plaintiff's expert witness, Dr. Donald H. Kaplan, and $320,688.20 is for other non-taxable costs. Under Section 8.10 of the Financing Agreement, "the successful or prevailing party or parties shall be entitled to recover all reasonable attorneys' fees and other costs incurred in such action or proceeding, in addition to any other relief to which it or they may be entitled." Defendant does not dispute that First Federal was the prevailing party in this case. Defendant argues that the hourly rates for attorneys' time should be reduced to the maximum allowable pursuant to the EAJA, 28 U.S.C. § 2412(d)(2)(A). Def.'s Cross Mot. at 9-10. Defendant also argues that the hourly rates for

paralegals exceeded market rates.

A.      *The Hours Devoted by K&L Gates's Attorneys and Paralegals to the Prosecution
of Plaintiff's Case Were Reasonable*

First Federal's initial motion requested compensation for a total of 14,254.60 hours of
attorney and paralegal time.  Pl.'s Resp. to Cross Mot. at 12.  Defendant has raised objections to
various hours billed by First Federal's attorneys as having inadequate descriptions or being
unnecessary.  Def.'s Cross Mot. at 11-12.  Specifically, defendant objects to 93.4 hours of
attorney time entries as being "too vague to support an award."  *Id.*  In response, First Federal
withdrew 20.2 of these hours and provided supplemental explanations for each of the other time
entries objected to by defendant.  Pl.'s Resp. to Cross Mot., Table CC.  This Court has reviewed
each of the remaining time entries claimed by First Federal and finds that they adequately
describe the work performed and that such work was reasonable and necessary to the prosecution
of the litigation on behalf of First Federal.

Defendant objects to 174.7 hours of attorney/paralegal time spent driving to and from
storage facilities to review boxes of documents and traveling to and from the National Courts
Building to file papers in the case.  Defendant argues that these tasks are purely clerical and thus
are unrecoverable.  *Id.* at 12.  First Federal withdrew 113.7 of these hours and provided
supplemental information for each of the other time entries objected to by defendant.  Pl.'s Resp.
to Cross Mot., Table BB.  This Court "is reluctant to second-guess counsel's time allocation for
what has proved to be a winning case."  *Fla. Rock Indus. v. United States*, 9 Cl. Ct. 285, 288
(1985).  How experienced trial counsel staffs his or her case reflects counsel's professional
judgment as to which the Court recognizes substantial leeway.  *Id.*  In this case the risk of abuse
by plaintiff's counsel was minimal because of the complexity of the issues, the length of the
litigation, and the lack of any assurance that First Federal would prevail.  *Id.* at 289.  Plaintiff
therefore had every incentive to exercise control over the work of its counsel and to monitor
closely the cost of the litigation.  *Id.*  Throughout these proceedings, the Court observed
plaintiff's counsel to be both conscientious and efficient.  Absent some specific showing of
abuse, the Court will not second-guess counsel's decision to use attorneys or paralegals for work
which counsel reasonably deemed suitable for such professionals.  The amount of time spent
going to storage facilities and filing papers at the clerk's office is, in any case, small in the
context of the case as a whole, and there is no reason to impose these costs on plaintiff rather
than defendant.  Therefore, the Court approves of the remaining 61 hours of time objected to by
defendant.

B.      *The Blended Rates for Attorneys' Fees Claimed by Plaintiff Are Reasonable and
Should Not Be Limited by the Hourly Rates Provided for by the EAJA*

First Federal seeks a total of $2,853,177.61 in attorneys' fees for this case, which was
initially filed over thirteen years ago on August 7, 1995 (docket entry 1).  Pl.'s Mot at 1; Pl.'s
Addendum at 2.  This amount is based on "blended" hourly rates charged by First Federal's
lawyers, Kirkpatrick and Lockhart (now K&L Gates).  Pl.'s Mot. at 4-7.  First Federal and K&L

Gates negotiated an initial blended rate at the outset of the litigation and periodically adjusted the rate upward to a maximum of $315 per hour.  *Id.*  The blended rates were charged by all attorneys who worked on the case, regardless of the attorney's level of experience, or area of expertise.  *Id.*  First Federal has submitted declarations from counsel of record, David T. Case, and co-counsel, Joseph J. Brigati, both stating that the blended rates were negotiated at arms' length and resulted in legal fees below the prevailing market rates.  *See* Ex. to Pl.'s Mot., Case Decl. ¶¶ 6-9; Ex. to Pl.'s Mot., Brigati Decl. ¶ 3.

First Federal also has provided tables showing that for each year this case was pending, the blended rate was below the standard billing rates for most of the lawyers working on the case, including those lawyers with the highest billing rates.  In addition, the blended rate was below the corresponding hourly rates in the so-called "Laffey Matrix."  Pl.'s Mot. at 9-11.  The Laffey Matrix is prepared by the U.S. Attorney's Office based on the hourly rates allowed by the U.S. District Court for the District of Columbia initially in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985).  These rates, adjusted over time, have been found to be a "useful starting point" for setting the hourly rates of counsel practicing in the District of Columbia.  *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995); *Miller v. Holzmann*, 575 F. Supp. 2d 2, 14 (D.D.C. 2008) ("In the ensuing twenty-five years, this scheme, the Laffey matrix, has achieved broad acceptance in this Circuit and has served as a guide in nearly every conceivable type of case."); *Masias v. Sec'y of Health & Human Servs.*, No. 99-697V, 2009 WL 1838979, at *18 (Fed. Cl. Spec. Mstr., June 12, 2009).  Some courts have found that the Laffey Matrix rates should be discounted if the lawyers seeking fees did not do work comparable to the sort of complex litigation for which Laffey Matrix rates are appropriate.  *Masias*, 2009 WL 1838979, at *19 (finding that petitioner "failed to establish the similarity between the skills in *Laffey*," a case litigated for 13 years based on Title VII gender discrimination and the Equal Pay Act claims, "and the skills in a Vaccine Program case"); *Muldrow v. Re-Direct, Inc.*, 397 F. Supp. 2d 1 (D.D.C. 2005).  In this case, however, both parties agree that the issues were novel and complex.  Def.'s Resp. to BOC at 6-7 ("Both the liability and damages phases of this action involved complex, unique, legal and factual issues.").  Therefore, the Court concludes that the Laffey Matrix provides a reasonable guide to the prevailing market rates for lawyers prosecuting complex federal litigation in the District of Columbia, including the lawyers representing First Federal in this action.

For certain junior attorneys, the Laffey Matrix rate and the K&L Gates standard billing rates were, at times, below the relevant blended rate.  Pl.'s Mot. at 4-7, 9-11.  Counsel for First Federal explained that this higher rate for junior attorneys was "more than offset by the substantial discounts in rates for more senior associates and partners under the flat blended rate" since much of the case was staffed by more senior counsel due to the complex nature of the case.  *Id.* at 11.  Counsel's characterization with respect to staffing coincides with the Court's observations prior to and during trial.  Therefore, the overall total of attorneys' fees charged to First Federal was calculated on the basis of an overall hourly rate that was below the market rate.  *Id.*  Defendant does not appear to dispute that the blended rates charged to First Federal were below market rates nor does defendant assert that the blended rates were unreasonable.  Rather,

defendant argues that First Federal's recovery should be calculated by reference to the attorneys' hourly rates allowed by the EAJA, 28 U.S.C. § 2412(d)(2)(A), which provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." Def.'s Cross Mot. at 9-10. This argument appears to be based on First Federal's reliance upon the EAJA (in the course of supporting its claim for non-taxable costs, including fees of its expert witness) as one example of a fee-shifting statute that permits recovery of fees for expert witnesses. *See* 28 U.S.C. § 2412(d)(2)(A); Pl.'s Mot. at 15; Def.'s Cross Mot. at 9. Defendant asserts that since First Federal relies upon the EAJA's interpretation of the phrase "fees and other expenses" to support its claim to recover the fees of its expert witness, First Federal's claim for attorneys' fees should be governed in all respects by the EAJA. Def.'s Cross Mot. at 9. The Court does not agree with defendant's apparent contention that plaintiff must "take the bitter with the sweet" in respect of the EAJA.

Plaintiff's argument is not, as defendant would have it, that plaintiff seeks fees for its expert witness pursuant to the EAJA. Plaintiff seeks fees for its witness under the terms of the contract, and for assistance in interpreting that contract looks to the EAJA, which defines "fees and other expenses" to include "the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case." 28 U.S.C. § 2412(d)(2)(A). Courts often look to the interpretation of a similarly worded statute for guidance or analogy as an aid to interpretation of contract language, without concluding that the statute governs all aspects of the case. *See, e.g., Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 862 (9th Cir. 1979) (comparing a contract's arbitration provision to the FLSA for guidance on interpretation); *see also Am. Fed. Bank, FSB v. United States*, 74 Fed. Cl. 208, 220 (2006) (using the EAJA as guidance for computing costs to be awarded under Rule 37(c) of the Court of Federal Claims). Moreover, along with its comparison to the EAJA, First Federal cites several other fee-shifting statutes that allow a prevailing plaintiff to recover expert witness fees. Pl.'s Mot. at 14-15. Defendant does not argue, however, that the requirements of those other statutes (including the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 *et seq.*, and the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988) must govern plaintiff's claim under Section 8.10 of the Financing Agreement. Defendant fails to explain why only plaintiff's reliance upon aspects of the EAJA should result in the application of other aspects of the EAJA that are not found in the language of the parties' contract and would have the effect of reducing the award to which First Federal would otherwise be entitled. The contract does not impose a cap on hourly rates. There is simply no support for defendant's contention that because one portion of a statute is relevant by analogy to guide interpretation of the parties' contract, the entire statute becomes binding on the parties.

C.    *Using the Lodestar Method, First Federal Is Entitled to Recover Attorneys' Fees in the Amount of $2,853,177.61*

A widely accepted mode of determining reasonable attorneys' fees is the so-called "lodestar" method, which involves multiplying the number of hours reasonably expended on the

litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983); *Applegate*, 52 Fed. Cl. at 760. This calculation requires determining both the reasonable hourly rate and the reasonable number of hours expended on the litigation. First Federal's evidence demonstrates that K&L Gates' blended rates were, at most, equivalent to the established rates of lawyers of reasonably comparable skill, experience, and reputation in the District of Columbia. *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) ("[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."). In addition, the Court finds that the Government has not shown that the EAJA maximum hourly rates should limit the lodestar calculation in this case. In summary, the Court concludes that both the number of hours devoted to the case by plaintiff's counsel and counsel's hourly rates were entirely reasonable. Thus, plaintiff is entitled to $2,853,177.61 in attorneys' fees.

> D.   *The Court Has Reduced the Amount Sought by Plaintiff for Paralegal Fees by Approximately 28 Percent to Conform to Prevailing Market Rates With the Result That First Federal is Entitled to Recover Paralegal Fees in the Amount of $385,624.80*

Since the blended rates negotiated with First Federal covered only attorneys' fees, First Federal has requested paralegal fees at the standard billing rates of K&L Gates in the total amount of $534,027.90. Pl.'s Addendum at 2. Counsel of record for First Federal, David Case, states that "paralegals were billed to First Federal at their standard hourly rates," Ex. to Pl.'s Mot., Case Decl. ¶ 6, which were set at levels intended to be "commercially attractive to clients by attempting to keep them below the highest rates, and within the typical market rates for similar firms in the District of Columbia." Ex. to Pl.'s Resp. to Cross Mot., Case Supp. Decl. ¶ 5. Plaintiff does not cite any independent sources as evidence of a prevailing market rates for paralegals.

In arguing that First Federal has not established the prevailing market rates for paralegals during the relevant period, the Government cites hourly rates reported for the New England/Mid-East region as published by the National Association of Legal Assistants ("NALA rates"), asserting that the NALA rates establish the prevailing rates.[5] Using the NALA rates, defendant requests that plaintiff's claim for paralegal fees be reduced by around 40 percent resulting in a

---

[5] The Government does not contest the recoverability of fees for paralegal services as part of "attorneys' fees" or the propriety of calculating paralegal fees using the lodestar method. *Richlin Sec. Serv. Co. v. Chertoff*, 128 S. Ct. 2007, at *2014 (2008) (interpreting the phrase "reasonable attorney fees" in the EAJA "to reach fees for paralegal services as well as compensation for the attorney's personal labor" and finding that "fees for paralegal services must be recoverable at prevailing market rates").

total of $319,072.90.[6]  Def.'s Cross Mot. at 13; App. to Def.'s Cross Mot. at 19-21; Pl.'s
Addendum at 18.  However, the NALA rates are not evidence of the relevant prevailing rates
since the publication relied upon by defendant does not include paralegal rates for the District of
Columbia.  Def.'s Cross Mot. at 13 n.7; Pl.'s Resp. to Cross Mot. at 13-14.  Defendant provides
no other support for its assertion that the NALA rates establish the prevailing market rates for
services of paralegals in this case.

Since plaintiff provided only affidavits of the attorneys who performed the work for
which plaintiff is requesting reimbursement, plaintiff did not sustain its burden of showing that
its requested rates are reasonable.  *Norman v. Housing Auth.*, 836 F.2d 1292, 1299
(11th Cir. 1988) ("The applicant bears the burden of producing satisfactory evidence that the
requested rate is in line with prevailing market rates.  Satisfactory evidence at a minimum is
more than the affidavit of the attorney performing the work.") (internal citations omitted); *Plyler
v. Evatt*, 902 F.2d 273, 277-78 (4th Cir. 1990) ("In addition to the attorney's own affidavits, the
fee applicant must produce satisfactory specific evidence of the prevailing market rates in the
relevant community for the type of work for which he seeks an award.") (internal quotation
marks omitted).  The Court, however, Is not persuaded that the NALA rates relied upon by
defendant were the applicable prevailing rates in the District of Columbia since that survey
included only a region encompassing New York, Pennsylvania, New Jersey, Massachusetts,
Maryland, Connecticut, Maine, New Hampshire, and Rhode Island.  Defendant provided no
supporting evidence that rates averaged over this large, disparate region would be comparable to
the prevailing market rates for paralegal services in the District of Columbia.

Plaintiff did cite an independent source, the Laffey Matrix, as evidence of market rates for
attorneys' fees.  Pl.'s Mot. at 9-10; *see* Part II.B.  The Laffey Matrix also contains rates for
paralegals.  *See* http://www.usdoj.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_7.html
(last visited August 4, 2009).  The Court finds the paralegal rates listed in the Laffey Matrix to be
an accurate measure of the prevailing market rates for paralegal services during the relevant time
period.  Reducing paralegal rates to a maximum of the corresponding Laffey rate results in a

---

[6] There are several apparent anomalies in the rates requested by the Government in the
table of paralegal fees provided by plaintiff and stipulated to by the Government ("Stipulated
Table").  App. A of Pl.'s Addendum at 1-18.  For instance, in several cases, the hourly rate
advocated by the Government with respect to a specific paralegal's work during a particular
month exceeds the rate requested by plaintiff.  *Id.* at 3, 4, 6, 7.  In addition, although defendant
states that the prevailing market rate is computed on a yearly basis, for instance $80 per hour for
the year 2002, for several years defendant appears to use the hourly rate proposed for the
previous year during the month of January in the following year.  *See, e.g., id.* at 12 (setting the
"Rate Proposed by Defendant" at $76 per hour for the week of 1/11/2002).  Because the Court
does not rely upon defendant's proposed rates in calculating the award of paralegal fees to First
Federal, the Court need not resolve such oddities.

reduction of $148,403.10 in plaintiff's claim for paralegal fees. The Court therefore awards plaintiff a total of $385,624.80 in paralegal fees.[7]

| Table 1 | | | |
|---|---|---|---|
| **Time Period** | **Rate Requested by Plaintiff** | **Rate Proposed by Defendant** | **Laffey Matrix Rate** |
| **June 1, 1995 - May 31, 1996** | $62-$85 | $53 | $80 |
| **June 1, 1996 - May 31, 1997** | $80-$95 | $57-$62 | $80 |
| **June 1, 1997 - May 31, 1998** | $85-$100 | $62-$66 | $85 |
| **June 1, 1998 - May 31, 1999** | $55-$118 | $66-$70 | $85 |
| **June 1, 1999 - May 31, 2000** | $60-$125 | $70-$73 | $90 |
| **June 1, 2000 - May 31, 2001** | $90-$130 | $73-$76 | $90 |
| **June 1, 2001 - May 31, 2002** | $80-$135 | $76-$80 | $95 |
| **June 1, 2002 - May 31, 2003** | $135 | $80 | $100 |
| **June 1, 2003 - May 31, 2004** | $145-$175 | $86-$93 | $105 |
| **June 1, 2004 - May 31, 2005** | $110-$175 | $93 | $110 |
| **June 1, 2005 - May 31, 2006** | no time billed | | |
| **June 1, 2006 - May 31, 2007** | $260 | $100 | $120 |
| **June 1, 2007 - May 31, 2008** | $260-$280 | $100-$102 | $125 |
| **June 1, 2008 - May 31, 2009** | $280 | $102 | $130 |
| **Total (Rate multiplied by the hours approved in Part II.A)** | $534,027.90 | $319,072.90 | $385,624.80 |

---

[7] The Court used the Stipulated Table to calculate the award for paralegal fees by inserting the hourly rate from the Laffey Matrix as listed in Table 1 in place of any higher rate requested by plaintiff. *See* App. A of Pl.'s Addendum. Where plaintiff's requested rate was less than the corresponding Laffey Matrix rate, the Court used plaintiff's lower rate.

     E.    *First Federal Is Entitled Under Section 8.10 to Recover its Other Reasonable Costs, Including Fees of First Federal's Expert Witness, Dr. Donald H. Kaplan*

Section 8.10 includes broad language contemplating the recovery of reasonable "other costs incurred" in prosecuting the litigation, as well as reasonable attorneys' fees. Under the heading of "other costs" First Federal seeks to recover $1,368,071.51 attributable to the fees charged by its expert witness, Dr. Donald H. Kaplan. Defendant does not appear to object separately to this specific expenditure. The Court finds plaintiff's claim for this expense to be reasonable. Dr. Kaplan contributed significantly to plaintiff's development of its case and it was clear that Dr. Kaplan's participation at trial was crucial to the presentation of plaintiff's case. The Court cannot fault counsel's decision to rely on Dr. Kaplan, whom the Court found to be thorough and credible. *See First Federal II*, 76 Fed. Cl. at 121. In light of the importance of Dr. Kaplan's participation, and the complexity of the factual and legal issues requiring Dr. Kaplan's assistance, his fees seem to the Court to be eminently reasonable.

Defendant does not object to other individual non-taxable expenses claimed by First Federal. Rather, defendant argues generally that First Federal's request for such costs should be denied because they go beyond categories of costs as enumerated in 28 U.S.C. § 1920.[8] Def.'s Cross Mot. at 7-8. However, as discussed in Part I above, Section 8.10 of the Financing Agreement authorizes the recovery of "other costs [reasonably] incurred." Section 8.10 is not limited to the categories of costs set forth in § 1920. The Court has reviewed First Federal's thorough documentation of its non-taxable costs in the amount of $320,688.20 for thirteen years of litigation, including $288,503.18 for copying costs, $38,361.19 for telephone and facsimile costs, $381.04 in total postage costs, and $38,361.19 in electronic research costs. Pl.'s Mot. at 16-17; Ex. to Pl.'s Mot., Case Decl. ¶¶ 13-24. The Court finds plaintiff's claim to recover these non-taxable costs to be consistent with Section 8.10 and, if anything, conservative in amount. Pl.'s Mot. at 16-17 ("Counsel has again closely reviewed its bills and costs over the duration of this case, and has reduced its sought cost recovery by varying amounts in order to seek litigation costs properly attributable to its success in this proceeding . . . . Thus, of an initial total [non-taxable] costs [in the] amount of $771,885.40, Plaintiff has calculated a reduced amount of $332,151.14 . . . . Furthermore, Plaintiff is concurrently seeking to recover $11,462.94 in copying charges related to pleadings and exhibits as part of its Bill of Costs. Consequently,

---

[8] 28 U.S.C. § 1920 provides: "A judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree."

Plaintiff has subtracted that amount from its [claim for non-taxable] copying charges above, for a requested costs calculation of $320,688.20."); Ex. to Pl.'s Mot., Case Decl. ¶ 11 ("To be conservative in this motion, I have redacted fees and charges that may not be directly or entirely attributable to the successful prosecution in this case."). As with utilization of senior attorneys, junior attorneys, and paralegals, the Court is not inclined to second-guess counsel's decision to incur expenses that were reasonable and necessary to properly present plaintiff's case. *Fla. Rock*, 9 Cl. Ct. at 291. The parties' contract provides for recovery of reasonable "other costs incurred" in prosecuting the litigation. Dr. Kaplan's fees and the other requested items of non-taxable costs constitute reasonable "other costs incurred" within the meaning of Section 8.10, and therefore they are recoverable under Section 8.10.

In summary, in connection with First Federal's motion the Court awards plaintiff a total of $2,853,177.61 in attorneys' fees, $385,624.80 in paralegal fees, $1,368,071.51 in fees of its expert witness, Dr. Kaplan, and $320,688.20 in other non-taxable costs for a total of $5,046,205.32 in attorneys' fees, paralegal fees, and other non-taxable costs.

## III.    Plaintiff Is Entitled to Recover Taxable Costs in the Amount of $118,643.20

In addition to its request for attorneys' fees, paralegal fees, and other non-taxable costs discussed above, plaintiff claims $118,643.20 in taxable costs, an amount $2,017.90 less than it sought in its bill of costs filed on December 12, 2008. Pl.'s BOC; Pl.'s Reply for BOC.

### A.  *Plaintiff's Reply In Support of Its Bill of Costs Was Timely*

As indicated at the outset, there are several motions pending before the Court that relate to defendant's objections to plaintiff's bill of costs. As discussed below (1) defendant's motion for reconsideration of the Court's order extending by four days the time for plaintiff to file its reply in support of its bill of costs is **DENIED**; (2) defendant's motion for leave to file a sur-reply to plaintiff's reply is **GRANTED**; and (3) plaintiff's request to file an opposition to defendant's sur-reply is **GRANTED**.

Following receipt of the mandate of the Court of Appeals, this Court held a telephonic status conference on November 21, 2008 during which both parties agreed to a schedule for filing briefs regarding plaintiff's motion for attorneys' fees and costs. The Court filed an order incorporating this schedule, including a due date of January 27, 2009 for plaintiff's reply in support of its motion for attorneys' fees and expenses pursuant to Section 8.10. On January 26, 2009, plaintiff filed a motion for an extension of time until January 30, 2009 to file: (1) a reply in support of its motion for attorneys' fees and costs; (2) a response in opposition to defendant's cross motion to dismiss plaintiff's claims for attorneys' fees; and (3) a reply to defendant's objections to plaintiff's bill of costs. Plaintiff's Unopposed Motion for an Enlargement of Time to Oppose Defendant's Cross-Motion to Dismiss, Reply to Defendant's Response to Plaintiff's Motion for Attorneys' Fees and Costs, and to Reply to Defendant's Opposition to Plaintiff's Bill of Costs (docket entry 196, Jan. 26, 2009) ("Pl.'s MET"). Counsel for plaintiff represented that he had conferred with defendant's counsel and that defendant did not oppose the extension of

time.  Pl.'s MET at 1.  The Court entered an order on the same day granting plaintiff's motion for extension.

Three days later, on January 29, 2009, defendant filed a motion for reconsideration of the Court's order granting the extension as it related to the deadline for plaintiff to file a reply in support of its bill of costs.  In its motion, defendant stated that "plaintiff mistakenly included a statement [in its motion] that the Government did not oppose its request for an enlargement of time to file its reply to our objections to plaintiff's bill of costs."  Def.'s Mot. for Reconsid. at 1-2.  Defendant concedes that it did not oppose the extension for the other two filings at issue in the order.  *Id.*  In its motion, defendant contends that it could not, legally, have agreed to an extension of time for the filing of a reply by plaintiff in support of its bill of costs because any such extension is prohibited by RCFC 6(b)(2)[9] and RCFC 54(d)(1)(C)(v).[10]  Plaintiff filed a response to defendant's motion for reconsideration on January 30, 2009—the same day plaintiff filed the materials described in its motion for extension of time including plaintiff's reply memo in support of its bill of costs (docket entry 199) ("Pl.'s Resp. to Mot. for Reconsid.").  Defendant filed a reply in support of its motion for reconsideration on February 4, 2009 (docket entry 202) ("Def.'s Reply for Mot. for Reconsid.").

1.      Standard on a Motion for Reconsideration

Defendant requests reconsideration pursuant to RCFC 59(a)(1), which provides:

> The court may, on motion, grant a new trial or a motion for reconsideration on all or some of the issues—and to any party—as follows: (A) for any reason for which a new trial has heretofore been granted in an action at law in federal court; (B) for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court; or (C) upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong or injustice has been done to the United States.

When a party moves for reconsideration of a final judgment or seeks a new trial under RCFC 59, it bears a heavy burden and must support its motion by a showing of "extraordinary circumstances which justify relief."  *Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 300 (1999).  The general rule is that interlocutory orders may be set aside or modified by the court until a final judgment is entered.  *John Simmons Co. v. Grier Bros.*, 258 U.S. 82, 88 (1922); RCFC 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties *and may be revised at any time before the entry of a judgment*

___

[9]  RCFC 6(b)(2) provides: "The court must not extend the time to act under RCFC 52(b), 54(d)(1), 59(b), (d) and (e), and 60(b), except as those rules allow."

[10]  RCFC 54(d)(1)(C)(v) provides: "No extensions of time will be permitted under this rule and the failure of the prevailing party to file a Bill of Costs in a timely manner will constitute a waiver of any claim for costs."

*adjudicating all the claims and all the parties' rights and liabilities*.") (emphasis added).  Instead of the strict rules governing motions to amend or alter final judgments, the law of the case doctrine applies to interlocutory decisions.  *Arizona v. California*, 460 U.S. 605, 618-19 (1983); *Exxon Corp. v. United States*, 931 F.2d 874, 877 (Fed. Cir. 1991) ("Orderly and efficient case administration suggests that questions once decided not be subject to continued argument but the court has the power to reconsider its decisions until a judgment is entered."); *Fla. Power & Light Co. v. United States*, 66 Fed. Cl. 93, 95 (2005).  "Under the law of the case doctrine, the Court has wider latitude to reconsider and modify an interlocutory order at any time before the entry of a final judgment, subject to the principle that questions once decided ought not to be subject to continued re-argument."  *Precision Pine & Timber, Inc. v. United States,* 81 Fed. Cl. 235, 245 n.7 (2007).

The Court's order granting plaintiff's motion for extension of time to file its reply in support of its bill of costs did not adjudicate any of the claims in this case and thus was an interlocutory order.  Even under the more flexible standards governing reconsideration of a non-final order, however, this Court is not persuaded that its order should be revisited.

2.   <u>Defendant Has Not Demonstrated That the Court's Order Granting<br>Plaintiff a Four-Day Extension of Time Constituted a Clear Error of Law</u>

Defendant contends that RCFC 6(b)(2) and RCFC 54(d)(1)(C)(v) "prohibit an extension of time to file the bill of costs, objections to the bill of costs, and a reply in support of the bill of costs."  Def.'s Mot. for Reconsid. at 2.  RCFC 54(d)(1) provides:

> (1) *Costs Other Than Attorney's Fees*.  Costs—other than attorney's fees—should be allowed to the prevailing party to the extent permitted by law.  *See* 28 U.S.C. § 2412(a).
>     . . .
>     (B) *Timing and contents of a Bill of Costs*.  A Bill of Costs must:
>         (i) be filed within 30 days after the date of final judgment, as defined in 28 U.S.C. § 2412(d)(2)(G);
>         . . .
>     (C) *Procedures Applicable to a Bill of Costs*.
>         (i) *Objection*.  An objection to some or all of the requested costs may be filed within 28 days after service of the Bill of Costs.
>         (ii) *Reply.*  A reply to an objection may be filed within 7 days after service of the objection.
>         . . .
>         (v) *Time Extensions*.  No extensions of time will be permitted under this rule and the failure of the prevailing party to file a Bill of Costs in a timely manner will constitute a waiver of any claim for costs.

20

Defendant states that "RCFC 54(d)(1)(C) plainly provides no exception to the seven-day filing requirement for replies in support of bills of costs found in RCFC 54(d)(1)(C)(ii), and RCFC 6(b)(2), therefore, allows no extension of time." Def.'s Mot. for Reconsid. at 2.  Accordingly, defendant argues, the Court should reconsider its order of January 26, 2009.

Although the court's rules could be read as defendant urges, they may also be read in another manner, *i.e.*, to only prohibit extensions of the *initial filing date* for a bill of costs.  Pl.'s Resp. to Mot. for Reconsid. at 2.  This reading of the rules is supported by several factors.  First, the judges of this court have allowed extensions of the filing dates for objections to and replies in support of bills of cost without regard to RCFC 54(d)(1).  *See, e.g., Asphalt Supply & Servs., Inc. v. United States,* 75 Fed. Cl. 598 (2007); *Ace Constructors, Inc. v. United States*, No. 04-299C (Fed. Cl., filed Jan. 31, 2008) (order granting an extension of nine days for plaintiff to file its reply in support of its bill of costs).  Defendant cites no case in which RCFC 54(d)(1)(C) was found to prohibit extensions for objections to and replies in support of bills of costs.

Second, the last clause of RCFC 54(d)(1)(C)(v), "and the failure of the prevailing party to file a Bill of Costs in a timely manner will constitute a waiver of any claim for costs," supports the interpretation that only the untimely filing of the initial bill of costs will result in a loss of rights.

Third, RCFC 54(d)(1) refers specifically to 28 U.S.C. § 2412(a) and § 2412(d)(2)(G), provisions of the EAJA, making clear that one of the motivations behind RCFC 54(d)(1) was to synchronize the timing rules of the Court of Federal Claims with respect to recovery of fees and costs with the timing rules of the EAJA.  The EAJA provides that "[a] party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses."  28 U.S.C. § 2412(d)(1)(B).  As a parallel to this 30-day rule, this court's rules also fix a 30-day deadline from the entry of final judgment as defined in the EAJA for filing a bill of costs.  RCFC 54(d)(1)(B)(i).  However, the EAJA does not prohibit time extensions for filings subsequent to the timely filing of an initial EAJA claim.  To accomplish the goal of conforming to the timing requirements of the EAJA, RCFC 54(d)(1)(C)(v) should be read to permit time extensions for filing oppositions to and replies in support of bills of costs while continuing to apply the mandatory 30-day deadline for filing an initial bill of costs.

Fourth, an interpretation pursuant to which a no-time-extension rule applies only to the deadline for filing the original bill of costs and not to further filings relating to the original bill serves the values of "finality and reliance."  *Dunn v. United States,* 775 F.2d 99, 104 (3d Cir. 1985) (discussing the timing rules of the EAJA).  However, "once the claim is filed, whether or not it is as complete as it should be, the interests of . . . timeliness and of finality and reliance have been satisfied."  *Id.*  Responses, replies, and amendments to the initial application for fees and expenses serve simply as a "fleshing out of the details" and do not disturb expectations of finality and reliance.  *Id.*  RCFC 6(b)(2) sets out exceptions to the general rule allowing the court to grant time extensions for good cause.  All the rules other than 54(d)(1) listed in RCFC 6(b)(2)—52(b), 59(b), (d), and (e) and 60(b)—require strict time limits in order to achieve

finality of the court's judgments.  RCFC 52(b) allows for an amended judgment based on amended or additional findings, RCFC 59(b), (d) and (e) allow for a new trial or an alteration of a judgment, and RCFC 60(b) allows the court to relieve a party from a final judgment.  Since these rules directly affect the finality of judgments, a finite time limit is understandably required in order that the parties may know with certainty that after a specific date the judgment will not change.  Fed. R. Civ. P. 6(b)(2) Advisory Committee Notes, 1946 Amendment, Note to Subdivision (b) ("The purpose of the amendment is to clarify the finality of judgments. . . . The question to be met under Rule 6(b) is: how far should the desire to allow correction of judgments be allowed to postpone their finality? . . . The amendment of Rule 6(b) now proposed is based on the view that there should be a definite point where it can be said a judgment is final . . . . [U]nless Rule 6(b) is amended to prevent enlargement of the times specified in Rules 50(b), 52(b) and 60(b), and the limitation as to Rule 59(b) and (d) is retained, no one can say when a judgment is final.  This is also true with regard to proposed Rule 59(e).").  However, though all the rules listed in Rule 6(b)(2) of the Federal Rules of Civil Procedure ("FRCP") prohibit extensions for the filing of an initial motion, none of those rules restrict time extensions in connection with subsequent briefing.  *See* RCFC 52(b), 59(b), (d), (e), 60(b).  The same rationale applies to the initial filing of a bill of costs under RCFC 54(d)(1).  *See* RCFC 58(e) ("Ordinarily, the entry of judgment may not be delayed, nor the time for appeal extended, in order to tax costs or award fees.").  A strict time limit for filing a bill of costs allows the losing party to know at a time certain whether taxable costs will be sought by the prevailing party.  However, there is no similar reason to preclude reasonable extensions of the deadlines for filing objections to or replies in support of bills of costs.

Fifth, the Court of Federal Claims Rules Committee has made it clear that the Rules of the Court of Federal Claims are meant to conform to the FRCP except in limited situations where changes to the FRCP are appropriate to conform to specific proceedings in this court.  RCFC Introductory Rules Committee Note ("The Federal Rules of Civil Procedure applicable to civil actions tried by a United States district court sitting without a jury have been incorporated into the following rules to the extent appropriate for proceedings in this court."); RCFC Introductory 2002 Rules Committee Note ("In the 2002 revision, the court has endeavored to create a set of rules that conforms to the Federal Rules of Civil Procedure . . . to the extent practicable given differences in jurisdiction between the United States district courts and the United States Court of Federal Claims.  Consistent with this objective, interpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure.");  RCFC Introductory 2005 Rules Committee Note ("The 2005 revision extends the symmetry between these rules and the Federal Rules of Civil Procedure."); RCFC Introductory Post-2002 Amendments Rules Committee Note ("To maintain symmetry between the court's rules and the Federal Rules of Civil Procedure, the court has adopted a policy of regularly amending its rules to reflect parallel changes in the Federal Rules of Civil Procedure."). RCFC 54 is different than FRCP 54.  The Rules Committee Notes to RCFC 54 explain this difference.  "[B]ecause the allowance of attorneys' fees and costs in this court is almost always determined under the provision of [the EAJA], it was deemed advisable to reflect this fact in subdivision (d)(2) rather than to retain the broader, but potentially misleading, language that appears in FRCP 54(d)(1)."  RCFC 54(d) Rules Committee Notes, 2002 Revision.

The Rules Committee of this court clearly intended that RCFC 54(d) would include a deadline for filing a bill of costs keyed to the entry of a final judgment as defined by the EAJA. However, if RCFC 54(d) is read as defendant suggests, it would depart not only from the requirements of the EAJA but also those of the FRCP, which have no deadline for the filing of a bill of costs and have no timing restrictions related to briefing of a bill of costs after the initial filing. There is no evidence that the Rules Committee intended to impose more severe timing restrictions than the FRCP. There is no apparent reason to depart from the flexibility in setting a briefing schedule with respect to objections to and replies in support of bills of costs provided by the FRCP.

Defendant cites *JGB Enterprises, Inc. v. United States*, 71 Fed. Cl. 468 (2006), as requiring the conclusion that no extensions may be granted for briefing subsequent to a timely filed bill of costs under 54(d)(1). Def.'s Reply for Mot. for Reconsid. at 2. In *JGB,* this Court found that the language of RCFC 6(b) prohibiting the Court from extending the time "for taking *any action* under RCFC 52(b), 54(d)(1), 59(b), (d), and (e), and *60(b)*, except to the extent and under the conditions stated in them" prohibited the filing of what plaintiff in *JGB* inaccurately characterized as an amendment to its earlier 60(b) motion after the one-year time limit had expired. 71 Fed. Cl. 468, 470 (2006) (quoting RCFC 6(b)(2) (emphasis in original)).[11] Defendant argues that "in *JGB*, this Court concluded that RCFC 6(b)(2)'s prohibition of an extension [of time] for 'any action' under RCFC 60(b) applies not only to the initial motion pursuant to RCFC 60(b), but also the filing of an amended motion" and "[t]his Court's reasoning in *JGB Enterprises* should apply equally to RCFC 54(d)(1)." Def.'s Reply for Mot. for Reconsid. at 2.

However, the Court's decision in *JGB* is distinguishable from this case. Pl.'s Mot. for Resp. to Sur-Reply at 4. The filing at issue in *JGB* was a so-called "amended motion" relying upon on an entirely different legal and factual basis than JGB's initial Rule 60(b) motion. JGB's second Rule 60(b) motion was filed beyond the one-year period allowed for RCFC 60(b) motions. *JGB*, 71 Fed. Cl. at 469. To permit the filing of such an "amended motion" beyond the one-year time limit would undermine the values of finality and repose by allowing a party to make what is essentially an initial filing under Rule 60(b) out of time. In contrast, First Federal's reply does not advance any new theory or theories for taxing the costs in question. Rather, it responds to defendant's opposition to plaintiff's initial bill of costs by supplying additional supporting explanation and documentation, all of which is contemplated by RCFC 54(d)(1)(C)(ii). Plaintiff's reply is not a disguised initial filing, but is a "fleshing out of the details" relating to costs already sought in plaintiff's initial bill of costs. *Scarborough v. Principi*, 273 F.3d 1087, 1092 (Fed. Cir. 2001), *See also Scarborough v. Principi*, 541 U.S.

---

[11]   The 2008 amendments to the Rules of the Court of Federal Claims, effective November 3, 2008, made a slight change to the wording of RCFC 6(b)(2), "may not extend the time for taking any action under. . ." was changed to "must not extend the time to act under." According to the Rules Committee Notes on the 2008 Amendment, "The language of RCFC 6 has been amended to conform to the general restyling of the FRCP."

401 (2004). Therefore, the rationale for the decision in *JGB* does not extend to this case. It is noteworthy that the Court in *JGB* specifically allowed time extensions for defendant's response to plaintiff's initial 60(b) motion. 71 Fed. Cl. at 469 ("On January 4, 2006, defendant filed an unopposed motion for enlargement of time within which to file its response to plaintiff's motion, which the Court granted . . . . On February 3, 2006, defendant filed another unopposed motion for an enlargement of time (also granted).").

In light of the foregoing, the Court has concluded that its order allowing a four-day extension of time for plaintiff to file a reply in support of its bill of costs was based upon a reasonable reading of RCFC 54(d)(1) and did not constitute a clear error of law.

> 3.   Defendant Has Not Demonstrated That the Court's Order Granting
>       Plaintiff a Four-Day Extension of Time to File Its Reply Brief Resulted in
>       "Manifest Injustice"

Defendant states that reconsideration of the Court's January 26, 2009 order granting defendant's motion for extension of time is warranted in order to prevent manifest injustice. Def.'s Reply for Mot. for Reconsid. at 4-5. The only reasons given by defendant to support a finding of manifest injustice are that plaintiff's late-filed reply could potentially allow for the recovery of "costs that would otherwise be unsupported" and the "manifest error of law in allowing an extension of time will [thus] cause manifest injustice to the Government." *Id*. However, "[w]here reconsideration is sought due to manifest injustice, the moving party can only prevail if it demonstrates that the injustice is 'apparent to the point of being almost indisputable.'" *Shirlington Limousine & Transp., Inc. v. United States*, 78 Fed. Cl. 27, 31 (2007) (quoting *Pac. Gas & Elec. Co. v. United States*, 74 Fed. Cl. 779, 785 (2006)). The interests of reliance and finality were satisfied by the initial timely filing of plaintiff's bill of costs. *See Dunn*, 775 F.2d at 104. Defendant has not pointed to any substantial governmental interest that is in any way affected by the fact that plaintiff's reply in support of its bill of costs was filed, in accordance with this Court's January 26, 2009 order, a few days after the seven-day period referenced in RCFC 54(d)(1)(C)(ii).

In fact, striking plaintiff's reply would create a manifest injustice to plaintiff. It appears that there was a miscommunication between counsel for plaintiff and defendant regarding the scope of defendant's consent to plaintiff's motion for a time extension. However, defendant had notice of the misunderstanding on January 26, 2009, when plaintiff filed its motion for the time extension. Plaintiff's motion clearly indicated its understanding that defendant did not oppose an extension of time for filing any of the papers due January 26 and 27. Pl.'s MET at 1 (requesting more time to file "First Federal's replies and oppositions to Defendant United States' Cross Motion to Dismiss Plaintiff's Claims for Attorneys' Fees and Other Costs, and Objection to the Bill of Costs" and stating "[d]efendant does not oppose this request"). In addition, on the afternoon of that same day, the Court filed its order making it clear that the Court considered the due date to have been extended from January 27 to January 30, 2009 for all three documents listed in plaintiff's motion. Order Granting Pl.'s MET ("Upon review and consideration of plaintiff's unopposed motion for an enlargement of time to oppose defendant's Cross Motion to

24

Dismiss, Reply to Defendant's Response to Plaintiff's Motion for Attorneys' Fees and Costs, and to Reply to Defendant's Opposition to Plaintiff's Bill of Costs, it is hereby ORDERED that plaintiff's motion is granted, and the Court's November 21, 2008, scheduling order is hereby amended such that plaintiff's filings shall be due no later than Friday, January 30, 2009.").

Both plaintiff's motion and the Court's order clearly indicated the extent of the apparent miscommunication, and they were filed on Monday, January 26, 2009, the date by which defendant now contends plaintiff was required to file its reply in support of its bill of costs. According to defendant's motion for reconsideration, this was the very last date that plaintiff could have filed its reply.  Def.'s Cross Mot.  However, although defendant had notice on this date that both the Court and plaintiff believed the reply would be timely if filed by Friday, January 30, 2009, defendant (to the Court's knowledge) did not attempt to correct this misunderstanding with either the Court or plaintiff at that time.  A prompt correction of plaintiff's apparent misunderstanding on January 26, 2009, would have given plaintiff the option of filing its reply to defendant's objection to its bill of costs on the alleged due date (since this is an electronic case, even under defendant's theory plaintiff had until midnight on January 26, 2009 to file a reply).  *See* FRCP 6(a)(4)(A), 2009 Proposed Rules ("Unless a different time is set by a statute, local rule, or court order, the last day ends: for electronic filing, at midnight in the court's time zone.").  Instead, defendant waited three days, until Thursday, January 29, 2009 to file its motion for reconsideration, at which time plaintiff was already beyond the allegedly mandatory RCFC 54(d)(1) due date.

Presumably, plaintiff relied on what it understood to be defendant's position on the requested time extension.  In addition, plaintiff clearly relied on the corresponding order issued by the Court.  It would be an injustice to strike plaintiff's reply when plaintiff justifiably relied on the understanding that it had until January 30, 2009, to file its reply.  To make matters worse, the reply in support of plaintiff's bill of costs was plaintiff's chance to respond to defendant's allegations of missing documentation and inadequate supporting explanations.  It would negatively affect plaintiff's entitlement, as the prevailing party, to recover its costs as a matter of course to preclude consideration of such information.  Although plaintiff got the benefit of four extra days to prepare its reply, the Government cites, and the Court can perceive, no substantial detriment to the Government because its receipt of plaintiff's reply was delayed four days.  Moreover, any potential prejudice to the Government by the Court's granting plaintiff four extra days to file its reply was eliminated by the Court's decision to grant defendant's motion to file a sur-reply in response to plaintiff's reply.

Finally, Section 8.10 of the Financing Agreement provides that "the successful or prevailing party or parties shall be entitled to recover all reasonable attorneys' fees *and other costs incurred in such action or proceeding*."  Section 8.10 (emphasis added).  Therefore, to the extent that any costs the Court finds properly taxable under 28 U.S.C. § 1920 are later found to be non-taxable (*e.g.*, on appeal), the Court alternatively awards those costs to plaintiff under Section 8.10 of the Financing Agreement, along with the other non-taxable costs awarded herein. *See supra* Part II.E.  Reliance on Section 8.10 renders any timing issues under RCFC 54(d)(1)(C) irrelevant.  The time limits set forth in RCFC 54(d)(1)(C) do not affect plaintiff's right to recover

25

its "reasonable attorneys' fees and other costs incurred in [this] action" as provided for by Section 8.10.

In summary, the Court's interpretation of its rules is reasonable.  Its order was not based on any clear error of law.  In addition, defendant has failed to demonstrate any cognizable harm to the Government, to say nothing of "manifest injustice," resulting from the Court's order granting plaintiff an extension of four days to file its reply in support of its claim to the costs sought, in the first instance, pursuant to 28 U.S.C. § 1920.  Therefore, defendant has failed to satisfy the criteria for reconsideration.  Having determined that reconsideration of the Court's order of January 26, 2009 is not warranted, the Court **DENIES** defendant's motion for reconsideration.

> B.     *Defendant's General Objections Do Not Overcome the Presumption in Favor of Taxing Costs for Prevailing Litigants*

RCFC 54(d) provides for an award of costs to the prevailing party to the extent that such costs are permitted under 28 U.S.C. § 1920.  RCFC 54(d); 28 U.S.C. § 2412(a).  The language of RCFC 54(d) reflects the long-standing presumption in favor of awarding costs to prevailing litigants.  RCFC 54(d) ("Costs . . . *should be allowed* to the prevailing party . . .") (emphasis added); *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1183 (Fed. Cir. 1996) (agreeing that the language in RCFC 54(d)(1) creates a presumption that costs are to be awarded).  However, the prevailing party has the burden of establishing to the court's satisfaction that the specifically requested costs are properly taxable.  *Asphalt Supply*, 75 Fed. Cl. at 602.  To tax a particular cost, incurrence of the cost must have been a necessary litigation expense and the amount to be taxed must be reasonable.  *Id.*; *see also Soler v. Waite*, 989 F.2d 251, 255 (7th Cir. 1993); RCFC Form 4, "Bill of Costs," certification of counsel.

As stated earlier, this Court alternatively awards to plaintiff any of the costs that this Court has found properly taxable that are later held to be non-taxable, as "other costs incurred in [this] action" recoverable under Section 8.10 of the contract, which, as noted earlier, provides for recovery of "all reasonable attorneys' fees and other costs."  Similarly, 28 U.S.C. § 1920 "does not set maximum costs around which private parties may not contract."  *Monsanto Co. v. David*, 516 F.3d 1009, 1017 (Fed. Cir. 2008).  Instead, § 1920 limits the type of costs that a court may tax in the absence of "explicit statutory or contractual authorization to the contrary."  *Id.*  Section 8.10 is a contractual authorization for the recovery of costs, including costs that are ultimately determined to be non-taxable pursuant to 28 U.S.C. § 1920.[12]

---

[12] Defendant argues that the language "in addition to any other relief to which it or they may be entitled" in Section 8.10 precludes plaintiff from being awarded taxable costs under the Financing Agreement.  Def.'s Mot. for Sur-Reply at 10-11.  The Court disagrees.  Section 8.10 does not by its terms distinguish between taxable and non-taxable costs.  In any event, plaintiff does not, in fact, rely on Section 8.10 for recovery of taxable costs that are recoverable under 28 U.S.C. § 1920 (upon which plaintiff does, in the first instance, rely).  Plaintiff relies on Section 8.10 in the alternative if, when, and to the degree that any of plaintiff's claimed taxable costs are

Defendant has raised multiple objections to plaintiff's bill of costs.  Several of those objections are general, and the Court will address defendant's general objections first, separate from defendant's objections to specific taxable costs.

In its first general objection, defendant claims that because plaintiff did not submit a sufficiently detailed memorandum in support of the recovery of each item of costs, the Government should not be required to pay any of plaintiff's costs.  Def.'s Resp. to BOC at 1-5; *see also* Def.'s Mot. for Sur-Reply at 4-9.  The Court, however, may properly tax those expenses it finds allowable, necessary and reasonable, without regard to the length of the accompanying memorandum.  *See Asphalt Supply*, 75 Fed. Cl. at 603.  In this case, the costs requested by plaintiff are largely self-explanatory and plainly within the categories described in RCFC Form 4.  In addition, counsel's certification at the end of plaintiff's bill of costs is in the form of an affidavit for the purposes of RCFC 54(d).  *See* 28 U.S.C. § 1746.  Moreover, as indicated earlier, any potential prejudice to the Government by the Court's consideration of the supporting material submitted in plaintiff's reply is substantially mitigated by the Court's decision to grant defendant's motion for leave to file a sur-reply to plaintiff's reply.  The Court thus finds that lack of a longer memorandum or memoranda accompanying plaintiff's bill of costs does not affect plaintiff's entitlement under RCFC 54(d) to recover the taxable costs it reasonably and necessarily incurred in this action.

Defendant's second general objection to the taxation of costs to defendant is that the case was complex and raised novel issues of law.  Def.'s Resp. to BOC at 6-7.  However, the length and difficulty of a case does not by itself provide grounds for denying costs.  *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728 (6th Cir. 1986); *Centex Corp. v. United States*, No. 96-494C, Taxation of Costs (Fed. Cl., filed Nov. 30, 2005); *Bank United v. United States*, No. 95-473C, Taxation of Costs (Fed. Cl., filed Mar. 3, 2004).  Consistent with the authorities cited, the Court rejects defendant's objections based upon the complexity of the litigation and the novelty of the issues.

The defendant's third general objection is that plaintiff can afford to pay its own costs.  Def.'s Resp. to BOC at 7.  Ability to pay, however, is not ordinarily a determinative consideration in imposing costs.  *Smith v. SEPTA*, 47 F.3d 97, 99 (3d Cir. 1995).  Even a large disparity in wealth between the two sides does not necessarily overcome the presumption that costs will be taxed in favor of the prevailing party.  *Papas v. Hanlon*, 849 F.2d 702 (1st Cir. 1988).  Courts have rejected the argument that the court should deny costs to the prevailing party because that party can bear the costs of the litigation.  *See, e.g., Fehribach v. Ernst & Young LLP*, 493 F.3d 905, 912 (7th Cir. 2007); *Chapman v. AI Transport*, 229 F.3d 1012, 1039 (11th

---

ultimately held to be non-taxable.  The Court agrees that Section 8.10 furnishes an alternative basis for recovery of plaintiff's claimed taxable costs that are determined to be non-taxable.  Put another way: if costs are properly taxable, plaintiff receives them under § 1920; if costs claimed to be taxable are held not to be (but are held to be recoverable under Section 8.10), plaintiff receives them under Section 8.10.

Cir. 2000).  Indeed, costs have been taxed in favor of the prevailing party even when the losing party was an *in forma pauperis* litigant.  *Smith*, 47 F.3d at 100; *Halasz v. Univ. of New England*, 821 F. Supp. 40 (D. Me. 1993).  Consistent with the weight of authority, the Court therefore rejects defendant's argument based on plaintiff's ability to pay.

In its sur-reply in opposition to plaintiff's reply in support of its bill of costs, defendant argues that plaintiff did not respond in a timely manner to defendant's general objections regarding the effect of the complexity of the issues and plaintiff's relative wealth.  Therefore, defendant contends, plaintiff has conceded those issues and the Court should decline to tax any costs against the Government.  Def.'s Mot. for Sur-Reply at 1-2.  However, plaintiff is presumptively entitled to costs as the prevailing party.  *Manildra Milling*, 76 F.3d at 1185.  In addition, plaintiff did, in fact, respond to plaintiff's general objections in its reply to defendant's sur-reply.  Pl.'s Mot. for Resp. to Sur-Reply at 1-2.

>C.    *The Court Finds Plaintiff's Explanations and Documentation Sufficient to Establish the Necessity and Reasonableness of the Specific Costs That Make Up Plaintiff's Claim to Recover Taxable Costs in the Amount of $118,643.20*

Defendant objects to a half-dozen categories of costs claimed in plaintiff's bill of costs as not authorized by 28 U.S.C. § 1920, or as not adequately substantiated.  The Government argues that imposing liability upon it for these costs would abrogate the Government's sovereign immunity.  Def.'s Resp. to BOC at 7-8.  The Court must determine whether plaintiff has satisfied its burden to show that the costs which it seeks to tax to defendant were reasonably and necessarily incurred (and reasonable in amount) in prosecuting this litigation.  *Asphalt Supply*, 75 Fed. Cl. at 602 ("The prevailing party has the burden of establishing to the court's satisfaction that the requested costs are taxable.").  Moreover, as noted earlier, the Court alternatively awards to plaintiff the costs it seeks pursuant to 28 U.S.C. § 1920 that are ultimately held to be non-taxable pursuant to Section 8.10 of the Financing Agreement.  For the reasons set forth in Part I, *supra*, the Court has rejected the Government's argument that plaintiff's claim based upon Section 8.10 is barred by the doctrine of sovereign immunity.  Therefore,  the Court must determine whether the explanations and documentation provided by plaintiff are sufficient to support its claimed taxable costs under 28 U.S.C. § 1920 in the first instance or, alternatively, pursuant to Section 8.10 of the Financing Agreement.  For the reasons set forth below, the Court determines that plaintiff has made the requisite showing in support of its claimed costs under § 1920 and Section 8.10.

>1.  Fees of the Clerk

Plaintiff requests costs in the amount of $120.00 for filing fees paid to the Clerk.  This cost is expressly authorized by 28 U.S.C. § 1920(1) and defendant does not object to its taxation.  Thus, costs in the amount of $120.00 will be taxed in favor of plaintiff for fees of the clerk.

## 2. Fees of Court Reporters for Hearing Transcripts

The Court may properly tax the costs of transcripts of court proceedings when "(1) the transcripts are necessarily obtained for use in the case, and (2) the cost is reasonable." *ACE Constructors, Inc. v. United States*, 81 Fed. Cl. 161, 170 (2008). Defendant disputes whether certain of the transcript expenses meet the statutory requirement that they be "necessarily obtained for use in the case." Def.'s Resp. to BOC at 9-13. First Federal is seeking reimbursement of $3,338.00 incurred to obtain hearing transcripts (trial transcripts are treated separately). Pl.'s BOC. Defendant contends that First Federal has not established that any of the hearing transcripts were necessary and therefore the entire $3,338.00 should be disallowed. Def.'s Resp. to BOC at 9. In addition, defendant objects to plaintiff's requests for reimbursement of the cost of transcripts on disks, condensed transcripts, and premium delivery services. *Id.* at 9-13.

In response to these objections, plaintiff withdrew its request for $100.00 in premium delivery services for hearing transcripts and provided detailed descriptions of the hearings for which transcripts were ordered. Pl.'s Reply for BOC at 5-6. All seven of the hearing transcripts for which plaintiff requests costs dealt with key aspects of the case, including discovery procedures, dispositive motions, and significant pre-trial issues. *Id.* Defendant objects to three of the transcripts that related to matters affecting all *Winstar*-related cases. Def.'s Mot. for Sur-Reply at 12-14. Plaintiff responds that acquisition of these transcripts was reasonable and necessary since this case proceeded as part of a group of *Winstar*-related cases and counsel's understanding of the rulings articulated during the hearings in question was necessary to determine the general principles that would affect First Federal's claim and First Federal's status. Pl.'s Mot. for Resp. to Sur-Reply at 7. The Court finds plaintiff's documentation sufficient to support an award of costs for each of the seven hearing transcripts.

Plaintiff also explains that electronic and condensed transcripts and expedited delivery allowed counsel to provide an efficient presentation of its client's case and aided the Court's understanding of the case. *Id.* These costs ($2,216.90) are quite small relative to the hourly fees for attorneys, and such costs help reduce the number of billed attorney and paralegal hours and thereby reduce the overall cost of the litigation. *See ACE*, 81 Fed. Cl. at 171. The Court finds that these costs were incurred not simply for convenience, but rather were necessary for the timely and efficient litigation of First Federal's case. In addition, the Court gives some deference with respect to ordering transcripts of hearings to the litigation judgments made by the experienced trial counsel who represented plaintiff in this case. *See Servidone Constr. Corp. v. United States*, 20 Cl. Ct. 725, 732 (1990). As noted above, the Court finds plaintiff's explanation and documentation sufficient to establish the necessity and reasonableness of costs incurred by plaintiff for hearing transcripts in the amount $3,238.00.[13]

---

[13] This amount includes plaintiff's initial request for costs of hearing transcripts, $3,338.00, reduced by the $100.00 for premium delivery services withdrawn by plaintiff.

### 3.  Fees of Court Reporter for Trial Transcripts

Similarly, defendant objects to plaintiff's claim to tax costs in the amount of $83,937.48 incurred to acquire trial transcripts.  Defendant responds that the costs of real-time transcription services and laptop rental for the Court's use should not be allowed.  Def.'s Resp. to BOC at 14. Before the trial began, both parties agreed that acquisition of such services and equipment was appropriate, given the amounts at stake, the anticipated length of the trial, and the complexity and novelty of the issues.  *Id.*; Pl.'s Reply for BOC at 7.  Defendant appears to argue that because plaintiff agreed to share these costs, plaintiff should not be allowed to tax defendant for the share that plaintiff agreed to pay.  The Court finds that the parties' agreement does not bar plaintiff from pursuing a recovery of costs to which plaintiff would normally be entitled.  *Bank United v. United States*, No. 95-473C, Taxation of Costs (Fed. Cl., filed Mar. 3, 2004); *see Saunders v. Wa. Area Transit Auth., et al.*, 505 F.2d 331, 334 (D.C. Cir. 1974) (finding that agreement to share printing costs in connection with an appeal did not alter the ultimate cost allocation in accordance with Federal Rule of Appellate Procedure 39(a) and stating that "[o]nly when the litigant has unequivocally waived the entitlement are we justified in excluding it from his bill of costs").  The Court found real-time transcription services to be extremely useful during the trial.  In addition, as with hearing transcripts, the Court finds that electronic and condensed trial transcripts along with daily delivery allowed counsel on both sides to provide efficient service for their clients and improved presentations to the Court.  Defendant also objects to overtime charges by the court reporter for extended trial days.  Def.'s Resp. to BOC at 18.  However, these charges were due to *defendant's* own suggestion that certain sessions be extended.  Pl.'s Reply for BOC at 8.  Plaintiff withdraws its claim for $560.00 in handling and premium delivery charges incurred in connection with the acquisition of trial transcripts.  Pl.'s Reply for BOC at 8 n.6.  Thus, the court will allow $83,377.48 for fees of the court reporter for real-time transcription services and trial transcripts.

### 4.  Fees for Witnesses

Defendant challenges costs claimed by plaintiff for fees and expenses necessary to assure the presence of witnesses at trial.  Def.'s Resp. to BOC at 18-22.  In response, plaintiff waives all $1,357.60 of the costs for witness fees and expenses objected to by defendant.  Pl.'s Reply for BOC at 8.  The Court will allow taxation of the remaining $249.58 in witness fees and expenses to which defendant does not object.

### 5.  Costs for Certification and Duplication of Papers

First Federal seeks $4,005.54 for the cost of duplication of filings and $7,547.40 in costs for duplication of trial exhibits.  Pl.'s BOC.  Given the extraordinary duration of this demanding and complex case, the Court finds that plaintiff's costs of duplication are well documented, were necessarily incurred, and are reasonable in amount.  Accordingly, First Federal's claim for $11,462.94 in taxable duplication costs is allowed.

6.  Costs Incident to the Taking of Depositions

Finally, First Federal seeks $20,195.20 in costs incident to taking depositions.  Pl.'s BOC.
Defendant objects to "appearance fees" because of alleged insufficiency of explanation of their
necessity.  Def.'s Resp. to BOC at 23-24; Def.'s Mot. for Sur-Reply at 17.  Plaintiff, in its reply,
explains that these were fees charged by court reporters who appeared to transcribe the
depositions.  Pl.'s Reply for BOC at 9.  Costs of depositions of record that are reasonably
necessary to the case are customarily taxed in favor of the prevailing party.  *See* RCFC Form 4.
Defendant also objects to plaintiff's having acquired additional copies of deposition transcripts in
electronic or condensed format.  Def.'s Resp. to BOC at 24-25.  The Court is persuaded, however,
that copies of the deposition transcripts at issue were reasonably and necessarily obtained for use
in the case.  The costs so incurred are therefore properly taxable.  *Nissho-Iwai Co. v. Occidental
Crude Sales*, 729 F.2d 1530 (5th Cir. 1984).  As with trial transcripts, the Court finds acquisition
of additional copies of deposition transcripts to have been reasonable and necessary to plaintiff's
presentation of its case.  The Court will thus tax a total of $20,195.20 for costs incident to
depositions.

In summary, with respect to plaintiff's bill of costs, the Court will tax: (1) $120.00 for fees
of the clerk; (2) $3,238.00 for hearing transcripts; (3) $83,377.48 for trial transcripts; (4) $249.58
for witness fees and expenses; (5) $11,462.94 for duplication costs; and (6) $20,195.20 for costs
incident to depositions.  Thus, the Court awards plaintiff a total of $118,643.20 in taxable costs.

**CONCLUSION**

Plaintiff First Federal's Motion for Attorneys' Fees and Other Costs (docket entry 193) is
**GRANTED** to the extent that the Court awards plaintiff a total of $2,853,177.61 for attorneys'
fees and $385,624.80 for paralegals' fees; $1,368,071.51 in fees of plaintiff's expert witness, Dr.
Donald H. Kaplan; and $320,688.20 in other non-taxable costs.  Defendant's cross motion to
dismiss plaintiff's claims for attorney's fees and other costs is **DENIED.**  The Court directs that
taxable costs be assessed against defendant in the amount of $118,643.20.  In the alternative, and
to the degree any costs that the Court has held to be taxable to defendant under 28 U.S.C. § 1920
are determined in further proceedings, including at the appellate level, to be non-taxable, then the
Court awards those costs to plaintiff pursuant to Section 8.10 of the Financing Agreement.  The
Court's rulings are summarized in the following chart:

| Summary of Fees and Costs Awarded to First Federal | | |
|---|---|---|
| Attorneys' Fees | $2,853,177.61 | Part II.A,B,C |
| Paralegal Fees | $385,624.80 | Part II.A,D |
| Fees of Dr. Donald H. Kaplan | $1,368,071.51 | Part II.E |
| Other Non-Taxable Costs | $320,688.20 | Part II.E |
| Taxable Costs | $118,643.20 | Part III.A,B,C |
| **Total** | **$5,046,205.32** | |

The clerk is directed to enter judgment in favor of plaintiff in the total amount of $5,046,205.32, which includes $118,643.20 in taxable costs.

**IT IS SO ORDERED.**

s/ George W. Miller
GEORGE W. MILLER
Judge